# PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                           No. 01-4487

CLARENCE J. LOMAX,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-00-406)

Argued: May 9, 2002

Decided: June 14, 2002

Before WILKINSON, Chief Judge, and WILLIAMS and
KING, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Williams and Judge King joined.

_____

## COUNSEL

**ARGUED:** Brian Jay Grossman, ECK, COLLINS & MARSTILLER,
Richmond, Virginia, for Appellant. Stephen Wiley Miller, Assistant
United States Attorney, Richmond, Virginia, for Appellee. **ON
BRIEF:** Paul J. McNulty, United States Attorney, Richmond, Vir-
ginia, for Appellee.

**OPINION**

WILKINSON, Chief Judge:

In the wake of *Bailey v. United States*, 516 U.S. 137 (1995), Congress amended 18 U.S.C. § 924(c) to criminalize the "possession" of a firearm "in furtherance of" certain crimes. Defendant Clarence Lomax was indicted and found guilty of, *inter alia*, possession of a firearm in furtherance of a drug trafficking crime under the amended version of § 924(c). Lomax contends that there was insufficient evidence to convict him. However, the evidence was clearly sufficient for a rational trier of fact to find Lomax guilty. We therefore affirm.

I.

On December 2, 2000, Clarence Lomax placed a 911 call while in a state of cocaine-induced paranoia. When Richmond Police Officer Steven Jones responded to the call, he observed Lomax running toward him with a clearly visible 9mm semiautomatic pistol in his right hand. Following Jones' instructions, Lomax eventually tossed down his weapon and got to the ground. As Officer Jones approached, Lomax pulled a plastic bag out of his pants pocket and placed it under his body. Jones recovered the bag during Lomax's arrest, and it was later found to contain nineteen individually wrapped packages of cocaine base (crack).

Lomax was subsequently charged in a nine-count federal indictment with drug and weapons offenses stemming from this December 2 incident and from unrelated events on May 7, 2000. After a bench trial, the district court convicted Lomax on, *inter alia*, the following counts arising from the December 2 incident: possession of cocaine base with the intent to distribute, in violation of 21 U.S.C. § 841; possession of cocaine base, in violation of 21 U.S.C. § 844; possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

The district court denied Lomax's motion for a judgment of acquittal with respect to the § 841 and § 924(c) counts. As the fact finder,

the district court first concluded that Lomax intended to distribute the nineteen "hits" of crack to his friends. Next, the court found that there was "a nexus between [Lomax's] possession of the gun and the drugs because the only thing of value that [Lomax] had on him was the drugs." The district court explained that Lomax "wouldn't be waving a heavy duty 9 millimeter firearm unless it was for the purpose of protecting something of value, which the drugs would have been." And the court stressed that "obviously you don't have a 9 millimeter for shooting rats in a dump or starlings or pigeons or anything. That is a weapon that you would use for protecting something of value."

The district court sentenced Lomax as an armed career criminal to concurrent terms of 210 months imprisonment on various drug and firearms offenses, and to a consecutive term of 60 months imprisonment on the § 924(c) violation. Lomax appeals his conviction under § 924(c) for possession of a firearm in furtherance of a drug trafficking crime.*

II.

Section 924(c) currently provides in relevant part that:

> any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime —

---

*Lomax also appeals the district court's enhancement of his sentence under the armed career criminal provision of 18 U.S.C. § 924(e), claiming that the application of § 924(e) violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because his prior convictions were not alleged in his indictment. Lomax's contention is without merit because *Apprendi* expressly excluded prior convictions from its holding. *Apprendi*, 530 U.S. at 490; *see also, e.g.*, *United States v. Skidmore*, 254 F.3d 635, 642 (7th Cir. 2001) (holding that *Apprendi* does not affect enhanced sentence under § 924(e) and citing cases).

(i) be sentenced to a term of imprisonment of not less than 5 years[.]

18 U.S.C. § 924(c)(1)(A). The provision of § 924(c) criminalizing the "possession" of a gun "in furtherance of" a crime of violence or drug trafficking crime was added by Congress in 1998 in the wake of the Supreme Court's decision in *Bailey*.

*Bailey* dealt with a prior version of the statute that did not mention possession, and instead prohibited only using or carrying a firearm "during and in relation to" a crime of violence or drug trafficking. *See Bailey*, 516 U.S. at 138. The *Bailey* Court rejected a broad interpretation of "use," holding that it required "evidence sufficient to show an active employment of the firearm by the defendant." *Id.* at 143. The Court stressed that Congress' choice of the word "use" implied that the mere possession of a firearm was insufficient to sustain a conviction under § 924(c). *Id.* at 143, 148, 150. And the Court noted that if "Congress intended possession alone to trigger liability under § 924(c)(1), it easily could have so provided." *Id.* at 143.

In response to *Bailey*, Congress amended § 924(c) to indicate just such an intention. By adding the "possession in furtherance of" language, Congress meant to broaden the reach of the statute beyond the Supreme Court's narrow construction. *See, e.g.*, *United States v. Ceballos-Torres*, 218 F.3d 409, 413 (5th Cir. 2000), *cert. denied*, 531 U.S. 1102 (2001). Indeed, "[t]he legislative history indicates that the amended version of the statute added the phrase criminalizing possession 'in furtherance of' a drug trafficking crime in order to 'reverse the restrictive effect of the *Bailey* decision.'" *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002) (quoting House Report). Because Lomax was convicted under the new provision of § 924(c), not under the "use" or "carry" prongs, the *Bailey* decision and the subsequent amendment of the statute provide the context for the proper resolution of this case.

## III.

### A.

Lomax claims that there was insufficient evidence to support his conviction under § 924(c). Lomax does not challenge that he commit-

ted a drug trafficking crime by possessing nineteen individually wrapped packages of crack cocaine with the intent to distribute. Nor does he dispute that he simultaneously possessed the drugs and a 9mm semiautomatic pistol. Instead, Lomax asserts that there was insufficient evidence from which the fact finder could conclude that he possessed the gun "in furtherance of" his drug trafficking activity.

In reviewing the sufficiency of the evidence following a conviction, this court views "the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government." *United States v. Burgos*, 94 F.3d 849, 863 (4th Cir. 1996) (en banc). And we must sustain the fact finder's verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Myers*, 280 F.3d 407, 415 (4th Cir. 2002) (internal quotation omitted); *see also, e.g.*, *Burgos*, 94 F.3d at 862-63. Furthermore, "determinations of credibility are within the sole province of the [fact finder] and are not susceptible to judicial review." *Burgos*, 94 F.3d at 863 (internal quotation omitted).

In determining what evidence is sufficient to establish a violation of § 924(c), the statutory term "furtherance" should be given its plain meaning. According to the dictionary, "furtherance" means "[t]he act of furthering, advancing, or helping forward." *Webster's II New College Dictionary* 454 (1999); *see also, e.g.*, *Ceballos-Torres*, 218 F.3d at 412. We agree with our sister circuits that adopting this interpretation of "furtherance" is consistent with Congress' intent in amending § 924(c). *See Timmons*, 283 F.3d at 1252; *United States v. Mackey*, 265 F.3d 457, 460-61 (6th Cir. 2001), *cert. denied*, 122 S. Ct. 849 (2002); *Ceballos-Torres*, 218 F.3d at 415. *But see United States v. Iiland*, 254 F.3d 1264, 1271, 1274 (10th Cir. 2001). Therefore, § 924(c) requires the government to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime. However, whether the firearm served such a purpose is ultimately a factual question. *See, e.g.*, *Myers*, 280 F.3d at 415; *Ceballos-Torres*, 218 F.3d at 411.

When making this factual determination, the fact finder is free to consider the numerous ways in which a firearm might further or advance drug trafficking. For example, a gun could provide a defense against someone trying to steal drugs or drug profits, or it might

lessen the chance that a robbery would even be attempted. Additionally, a gun might enable a drug trafficker to ensure that he collects during a drug deal. And a gun could serve as protection in the event that a deal turns sour. Or it might prevent a transaction from turning sour in the first place. Furthermore, a firearm could help a drug trafficker defend his turf by deterring others from operating in the same area. *See Ceballos-Torres*, 218 F.3d at 412.

Moreover, there are many factors that might lead a fact finder to conclude that a connection existed between a defendant's possession of a firearm and his drug trafficking activity. Some of these factors may include, but are not limited to: "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Ceballos-Torres*, 218 F.3d at 414-15; *see also Timmons*, 283 F.3d at 1253; *United States v. Basham*, 268 F.3d 1199, 1206-08 (10th Cir. 2001), *cert. denied*, 122 S. Ct. 1336 (2002); *Mackey*, 265 F.3d at 462.

B.

In this case, there was more than sufficient evidence presented at the bench trial to support the district court's finding that Lomax possessed a firearm in furtherance of a drug trafficking crime. Lomax had nineteen hits of crack on his person, and he has not challenged his conviction for possession with the intent to distribute. In finding a nexus between this drug trafficking activity and Lomax's simultaneous possession of a semiautomatic pistol, the district court stressed that Lomax "wouldn't be waving a heavy duty 9 millimeter firearm unless it was for the purpose of protecting something of value." The court also noted that the only thing of value Lomax had on him was the crack.

Furthermore, Lomax's weapon was fully loaded and immediately accessible to him as he ran down the street holding it. And the firearm was clearly in close proximity to the drugs — Lomax carried the gun in his right hand and had the cocaine in his pants pocket. In addition, Lomax's possession of the gun was illegal because he was a felon in possession of a firearm. Moreover, the gun was discovered at night

under circumstances indicating that Lomax was involved in drug trafficking. The police found him with individually packaged hits of crack, and he had called 911 in a cocaine-induced paranoia.

Given this abundance of evidence, the district court could easily have concluded that Lomax possessed the firearm in furtherance of drug trafficking. In fact, carrying a firearm during a drug trafficking crime like Lomax did will "always seem to constitute 'possession in furtherance'" because "carrying a firearm always serves to protect the holder." *Ceballos-Torres*, 218 F.3d at 413.

Lomax's contention that there was insufficient evidence to show a connection between the firearm and the drugs is without merit. It is true that at trial Lomax offered an alternate explanation for why he had the gun. He claimed that he was carrying it because he feared someone was after him due to a misunderstanding about a woman. However, the district court was not required to accept Lomax's account of the events, and we cannot second guess the district court's credibility determination. *See, e.g.*, *Burgos*, 94 F.3d at 863. We therefore refuse to disturb the district court's verdict on appeal.

IV.

Fact finders are not required to blind themselves to the unfortunate reality that drugs and guns all too often go hand in hand. Indeed, § 924(c)'s purpose has been described "as an effort to combat the dangerous combination of drugs and guns." *Muscarello v. United States*, 524 U.S. 125, 132 (1998) (internal quotation omitted). Therefore, a fact finder is certainly entitled to come to the common-sense conclusion that when someone has both drugs and a firearm on their person, the gun is present to further drug trafficking. For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*