UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 01-4895

PIETR HITZIG,

*Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(CR-99-276-JFM)

Argued: February 24, 2003

Decided: April 14, 2003

Before TRAXLER and SHEDD, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Barry Coburn, COBURN & SCHERTLER, Washington, D.C., for Appellant. Christine Manuelian, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Thomas M. DiBiagio, United States Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Pietr Hitzig appeals his judgment of conviction on thirty-four counts of illegally dispensing controlled substances in violation of 21 U.S.C. § 841(a)(1). He contends that the district court erred in instructing the jury and in considering his motions for judgment of acquittal because it did not require the government to prove, as an essential element of the crimes charged, that he did not have a legitimate medical purpose for dispensing the controlled substances. We disagree with his contention and, accordingly, affirm.

I

Hitzig was, at times pertinent to the case, a physician who was authorized by the United States to dispense controlled substances.[1] In 1992, Hitzig began promoting a medical protocol that he developed involving the combination of fenfluramine and phentermine ("fen/phen"), both of which were approved by the FDA many years ago for use separately in the treatment of weight loss. By 1993, Hitzig's practice was limited solely to prescribing fen/phen. Hitzig believed that the use of fen/phen would help balance certain chemicals in the brain (dopamine and serotonin), and he promoted his protocol as being a cure-all for most illnesses, including cancer, AIDS, psychiatric illness, asthma, lupus, multiple sclerosis, and Gulf War syndrome.

---

[1]In December 1998, the Maryland Board of Physician Quality Assurance suspended Hitzig's license based on findings that he had engaged in sexual and professional misconduct against various patients. Hitzig surrendered his Maryland license in February 1999 and, in doing so, he admitted that he had engaged in unprofessional conduct. Hitzig then moved to California and treated patients there until June 1999.

After a two-year investigation, which included undercover buys, the execution of federal search warrants, and review of thousands of pages of subpoenaed records, the government charged Hitzig under § 841(a)(1) with thirty-two counts of illegally dispensing phentermine and fenfluramine, one count of illegally dispensing oxycodone, and one count of illegally dispensing hydromorphone. All of these are controlled substances. These counts involved Hitzig's interaction with twelve patients. For each of the counts, the government charged that Hitzig dispensed these controlled substances "not for a legitimate medical purpose in the usual course of professional medical practice and beyond the bounds of professional medical practice."

Hitzig's trial lasted approximately five weeks. The government presented the testimony of the patients referenced in the indictment (and/or their relatives), various physicians and medical personnel, law enforcement officers, members of Hitzig's office staff, and other patients. The government also introduced into evidence many of Hitzig's office records and patient medical records.

The evidence at trial established that Hitzig dispensed the controlled substances identified in the indictment. Moreover, the government's expert witnesses testified that in doing so, Hitzig acted beyond the bounds of professional medical practice in numerous ways. According to these experts, Hitzig exceeded the bounds of professional medical practice by: failing to conduct physical examinations; failing to take adequate medical histories; failing to maintain a proper record of patients' medical histories and treatments; failing to document medications given to patients; failing to document the bases for medicating patients; failing to administer baseline laboratory tests for assessing the condition of patients (*e.g.*, EKG, blood chemistry panel, TB test for an alcoholic, urinalysis for a drug addict); failing to adequately monitor patients during the course of their treatment; directing patients with a history of drug abuse to self-regulate their medications; failing to document the toxic effects of prescribed medications; failing to advise patients that the use of fen/phen to treat conditions other than weight loss was experimental; using a rapid screening device for measuring psychiatric distress as a basis for diagnosing illness; excessively dosing patients beyond recommended levels without basis; continually advising patients to increase their medications in response to problems with the medications; and engag-

ing in other improper conduct, such as violating rules of patient confidentiality by sharing patient medical information with others, encouraging patients to share medications, using drugs and alcohol in the presence of patients, and engaging in inappropriate sexual behavior with patients.

Hitzig acknowledges that some of his patients "had seriously negative outcomes," some "were not monitored aggressively enough" by him, and that he occasionally "interacted inappropriately with certain patients." *Brief of Appellant*, at 10. Hitzig's counsel conceded at oral argument that the government sufficiently proved that Hitzig's conduct as charged in the indictment was beyond the bounds of professional medical practice. Nevertheless, Hitzig argues (as he did at trial) that his conduct, while perhaps unorthodox, was done in good faith as a physician.

Consistent with this theory, Hitzig moved for judgment of acquittal at the close of the government's case-in-chief, arguing that the government had failed to prove (among other things) that he had acted without a legitimate medical purpose, which he contends is an essential element of the crimes for which he was indicted. The district court denied the motion, holding that the government was only required to prove (in addition to other elements) that Hitzig had acted *either* without a legitimate medical purpose *or* beyond the bounds of professional medical practice. Hitzig renewed his motion at the close of all of the evidence. The district court again denied the motion.

Hitzig requested that the district court instruct the jury that the government was required to prove that he acted without a legitimate medical purpose. However, the district court adhered to its prior determination that the government does not have this burden, and over Hitzig's objection, it instructed the jury accordingly.

The jury convicted Hitzig on all counts. The district court sentenced him to concurrent terms of 45 months imprisonment on each count, to be followed by a term of 3 years supervised release, and imposed a special assessment of $3,300.00.

## II

Section 841(a)(1) provides in pertinent part: "Except as authorized . . ., it shall be unlawful for any person knowingly or intentionally to

. . . distribute, or dispense, . . . a controlled substance. . . ." We have set forth generally the elements necessary for conviction under this statute as being (1) a knowing or intentional attempt to distribute or dispense (2) a substance known to be controlled (3) in an unauthorized manner. *United States v. Daniel*, 3 F.3d 775, 778 (4th Cir. 1993).

A.

We first address Hitzig's contention that the district court erroneously instructed the jury. Hitzig challenges the jury instructions only as they pertain to the third of the § 841(a)(1) elements. He argues that the district court improperly instructed the jury in a manner that allowed it to convict him for conduct that might amount to medical malpractice, but does not rise to the level of criminality. More specifically, Hitzig asserts that the linchpin of criminality in this circumstance is the requirement that a physician "be essentially just like a drug dealer: that he or she have issued the prescriptions solely to make money, rather than in pursuit of any legitimate medical undertaking." *Brief of Appellant*, at 51. Without this requirement, Hitzig asserts that the statutes underlying his conviction are void for vagueness or otherwise violative of due process. We review *de novo* the legal question of whether a district court properly instructed a jury on the statutory elements of an offense. *United States v. Rahman*, 83 F.3d 89, 92 (4th Cir. 1996).

With respect to physicians, we have held that establishing the third element — *i.e.*, the dispensation of a controlled substance is unauthorized — "requires proof that the charged conduct falls outside the boundaries of the [physician's] professional practice." *Daniel*, 3 F.3d at 778.[2] We have noted that there are no specific guidelines concerning what is required to support a conclusion that a physician acted outside the usual course of professional practice, and that a case-by-case analysis of evidence must be made to determine whether a reasonable inference of guilt may be drawn from specific facts. *United*

---

[2]Our formulation of this required showing is based on the Supreme Court's holding in *United States v. Moore*, 423 U.S. 122, 124 (1975), "that registered physicians can be prosecuted under § 841 when their activities fall outside the usual course of professional practice."

*States v. Singh*, 54 F.3d 1182, 1187 (4th Cir. 1995). Applying this standard, we have recognized that the government may meet its burden of proving this element by establishing that the physician's actions were not for legitimate medical purposes in the usual course of professional medical practice *or* were beyond the bounds of professional medical practice. *Id.*; *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1141 (4th Cir. 1994).[3]

Pertinent to our review, the district court instructed the jury that the government was required to prove beyond a reasonable doubt that Hitzig knowingly and intentionally dispensed the controlled substances charged in the indictment "other than for a legitimate medical purpose, and/or his actions were not within the bounds of professional medical practice." In defining the knowledge and intent components of the charge, the district court instructed the jury that a person must have acted willfully in order to be held criminally liable;[4] that in considering willfulness, the jury could consider whether a person "deliberately closed his eyes to what otherwise would have been obvious to him;" and that "a physician's subjective belief that he was acting for the best interest of his patients does not in and of itself constitute a complete defense."

Concerning the third of the three necessary elements, the district court specifically instructed:

> The final element the government must prove as to each count beyond a reasonable doubt is that the defendant dispensed the specific controlled substance other than for a legitimate medical purpose or not within the bounds of professional medical practice. It's actually and/or not within the bounds of professional medical practice.

---

[3]In *Daniel*, we held that an allegation that the physician attempted to dispense a controlled substance "not . . . for a legitimate medical purpose" satisfied the requirement that the dispensation must be "outside the boundaries of professional practice." 3 F.3d at 778.

[4]The district court defined the term "willfully" as "to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose to disobey or disregard the law."

A physician's own methods do not themselves establish what constitutes medical practice. In determining whether Dr. Hitzig's conduct was within the bounds of professional practice, you should, subject to the instructions I have already given you concerning the credibility of experts and other witnesses, consider the testimony you have heard relating to what has been characterized during the trial as the norms of professional practice.

You should also consider the extent to which, if at all, any violation of professional norms you find to have been committed by Dr. Hitzig interfered with his treatment of his patients and contributed to an overprescription and/or excessive dispensation of controlled substances. You should consider Dr. Hitzig's actions as a whole and the circumstances surrounding them.

A physician's conduct may constitute a violation of applicable professional regulations as well as applicable criminal statutes. However, a violation of a professional regulation does not in and of itself establish a violation of the criminal law. As I just indicated, in determining whether or not Dr. Hitzig is guilty of the crimes with which he is charged, you should consider the totality of his actions and the circumstances surrounding them and the extent and severity of any violations of professional norms you find he committed.

We hold that the district court's jury instructions are consistent with our precedent and are not improper. We reject Hitzig's contention that the district court erred because it did not instruct the jury that the government was required to prove that he both dispensed the controlled substances not for a legitimate medical purpose in the usual course of professional medical practice *and* in a manner that is beyond the bounds of professional medical practice. Our precedent makes it clear that the standard for criminal liability is that the physician's conduct in dispensing a controlled substance "falls outside the boundaries of the [physician's] professional practice." *Daniel*, 3 F.3d at 778. While the government may meet its burden of proving guilt by showing that a physician dispensed a controlled substance for an illegitimate purpose, the government is not required to make such a

showing. *See Singh*, 54 F.3d at 1188 ("In sum, although the testimony does not adduce compelling evidence that Dr. Singh prescribed with malicious motive or the desire to make a profit, those motivations, though common in § 841(a)(1) prosecutions, are not required to convict").[5]

B.

Having concluded that the district court properly instructed the jury, we now turn to Hitzig's contention that the evidence is insufficient to support the verdict. In doing so, we view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government, and we must sustain the verdict if any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir.), *cert. denied*, 123 S.Ct. 555 (2002).

Hitzig's argument concerning the sufficiency of the evidence hinges on his view concerning the government's burden of proof. Hitzig's counsel conceded at oral argument that if (as we have found) the government can meet its burden by establishing only that Hitzig dispensed the controlled substances in a manner outside the bounds of professional medical practice, then there is sufficient evidence in the record to support the verdict. Notwithstanding his concession, Hitzig argues that the government failed to present sufficient evidence to establish that he also dispensed the controlled substances for an illegitimate purpose and, for that reason, the verdict should not stand.

In light of our determination concerning the government's burden of proof and Hitzig's concession concerning the sufficiency of the evidence, and after our thorough review of the record, we hold that the government presented more than sufficient evidence to establish that Hitzig exceeded the bounds of professional medical practice in dispensing the controlled substances charged in the indictment.

---

[5]In *Tran Trong Cuong*, we approved an instruction that required the jury to find that the physician acted without a legitimate medical purpose *and* not in the usual course of medical practice, but we noted that the instruction appears to be "more strict" than *Moore* requires. 18 F.3d at 1137-38.

## III

In conclusion, we hold that the district court properly instructed the jury and that the evidence was sufficient to sustain the verdict. Accordingly, we affirm.

*AFFIRMED*