UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

v.

MANUS E. SUDDRETH,
          *Defendant-Appellee.*

No. 02-4034

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

MANUS E. SUDDRETH,
          *Defendant-Appellant.*

No. 02-4042

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CR-00-507-MJG)

Argued: February 27, 2003

Decided: April 28, 2003

Before MICHAEL, KING, and SHEDD, Circuit Judges.

———————————————————————

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

———————————————————————

**COUNSEL**

**ARGUED:** Samuel Robert Lyons, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Caroline D. Ciraolo, MARTIN, SNYDER & BERNSTEIN, P.A., Baltimore, Maryland, for Appellee. **ON BRIEF:** Eileen J. O'Connor, Assistant Attorney General, Robert E. Lindsay, Alan Hechtkopf, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Manus E. Suddreth was indicted on two counts of willfully filing materially false individual income tax returns for tax years 1993 and 1994. A jury returned a guilty verdict on both counts. The district court sentenced Suddreth to 12 months of imprisonment with a recommendation that the sentence be served in community confinement with work release.[1] The government appeals, alleging that the district court (1) incorrectly calculated Suddreth's criminal history category; and (2) improperly granted Suddreth a downward departure based on his accountant's incompetence in preparing his tax returns. Suddreth cross-appeals, contending that there was insufficient evidence to support the jury's finding that he willfully made false statements on his 1993 and 1994 federal tax returns.

---

[1]The government alleges that the Federal Bureau of Prisons accepted the district court's recommendation, and that Suddreth was scheduled to complete his community confinement on March 1, 2003.

## I.

Because a ruling in favor of Suddreth on his cross-appeal would render the government's appeal moot, we decide the cross-appeal first. In evaluating the sufficiency of the evidence, we consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002). In doing so following a conviction, we view all the evidence and the reasonable inferences drawn therefrom in the light most favorable to the government. *Id.*

Suddreth, a man with little formal education, has nevertheless owned and operated several businesses in the Baltimore area. One of his primary ventures is Patapsco Excavating Company (PEC), a landfill and excavating business, which Suddreth formed in the late 1980s.

During the early 1990s, Suddreth employed two individuals to run the office at the PEC landfill site. Neither had any bookkeeping or accounting education or experience.

When customers paid by check, Suddreth would often have the checks cashed for a fee at a check-cashing company several miles away, even though PEC maintained an account at a bank just one mile from its office. Some of this cash was used to pay the wages of PEC employees. After the checks were negotiated, the cash was placed in separate envelopes and given to each employee, and Suddreth would receive the surplus in an envelope after the processing fee was paid. Suddreth always received the most money.

Many PEC customers paid in cash. Often, PEC would receive anywhere from $200 to $1,000 per day in cash. These monies were placed in an envelope by the office staff and given to Suddreth at the end of each day. Suddreth told the office staff not to keep records of the amount of cash received from these cash transactions.

Suddreth also had his office staff pay many of his personal expenses by writing checks from the PEC account. In 1993 and 1994, Suddreth used PEC monies to, among many other things, buy personal vehicles, recondition an antique car and a boat, make extensive

renovations at his hunting camp in West Virginia, pay personal expenses for family and friends, purchase real property, and establish a tanning salon. Also, when Suddreth needed money to go on trips to Florida or to go to his hunting camp in West Virginia, he would have his office employees cash PEC checks at the check-cashing company and give the cash to him for his expenses.

The government adduced evidence that in 1993 Suddreth diverted more than $330,000 of PEC monies for his personal use. Also, in 1994 Suddreth diverted more than $160,000 of PEC monies for his personal use.

Suddreth met Marc Einstein, a former IRS revenue agent and CPA, in the late 1980s. Suddreth initially retained Einstein to advise him regarding a potential real estate development. Thereafter, Einstein's role broadened. He helped Suddreth restructure corporate entities, market an industrial park, collect rents and pay mortgages, prepare loan applications with banks, and negotiate with the City and County of Baltimore on problems relating to PEC's landfill. Einstein was also retained to prepare the corporate return for one of Suddreth's businesses, but Suddreth never hired Einstein to do the corporate return for PEC. Eventually, Suddreth hired Einstein to do his individual returns.

Even though Suddreth diverted nearly half a million dollars from PEC to pay his personal expenses in 1993 and 1994, Suddreth reported income of only $76,984 in 1993 and $4,700 in 1994 on the tax returns prepared by Einstein. After receiving his 1993 return from Einstein, Suddreth told him that he was disappointed over how much tax he owed. Suddreth signed both of these returns, verifying: "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete." J.A. 193, 221.

Suddreth was indicted on two counts of violating 26 U.S.C. § 7206(1) (1993 and 1994), which provides: "Any person who . . . [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe

to be true and correct as to every material matter . . . shall be guilty of a felony . . . ."

At trial, Suddreth raised the defense of reliance in good faith on his accountant, Einstein. Suddreth claimed that Einstein had full access to all of his records but made no effort to obtain any documentation to properly prepare the returns. Einstein testified that Suddreth gave him full access to request any records he wanted from the office employees, but that he did not think there would be many records that would be helpful for preparing the returns, because Suddreth's record keeping was so poor. Einstein also testified that he knew that Suddreth was spending more than his rental income could sustain in 1993, so Einstein merely estimated what that amount was based on what he generally knew about Suddreth's living expenses.

The district court instructed the jury on the good faith defense as follows:

> If the defendant while acting in good faith . . . believed Marc Einstein to be competent to prepare Federal income tax returns provided Marc Einstein with full and complete information with relation to his taxable income and expenses during the years 1993 and 1994, and the defendant then in good faith adopted, signed and filed the tax returns as prepared by Marc Einstein, without having reason to believe that they were not correct, then you should find the defendant not guilty. J.A. 156.

Thus, Suddreth had to prove both that he gave Einstein full and complete information about his taxable income, and that he had no reason to believe that the returns were not correct.

There is more than sufficient evidence in the record establishing that Suddreth knew the amount of income he reported on both the 1993 and 1994 returns was not correct. He diverted more than $330,000 of PEC monies in 1993 for his personal use, but he reported less than $77,000 income for that same period. Likewise, in 1994, he diverted more than $160,000 but reported income of only $4,700. When viewed in the light most favorable to the government, a reasonable jury could find beyond a reasonable doubt that Suddreth did not

file his returns in good faith and, instead, falsely declared that the returns were true and complete as to the amount of his income. Finding the jury verdict to be appropriate, we now turn to the sentencing issues raised by the government.

II.

A. *Criminal History Category*

The government contends the district court erred by reducing Suddreth's criminal history category. We review the grant of a downward departure relating to a defendant's criminal history category for abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 99 (1996). A district court abuses it discretion, by definition, when it makes an error of law. *Id.* at 100.

Suddreth's criminal history includes the following four convictions:

| | | |
|---|---|---|
| 1. | 1991: Unauthorized fill of wetlands | 1 |
| 2. | 1995: Litter dump over 500 pounds | 1 |
| 3. | 1995: Driving under influence | 1 |
| 4. | 1997: Litter dump over 500 pounds | $\underline{1}$ |
| | | 4 |

Under the Sentencing Guidelines, a criminal history score of four placed Suddreth in criminal history category III. A score of three would have placed him in category II.

At sentencing, Suddreth argued, pursuant to guideline § 4A1.3, that category III over-represented the seriousness of his criminal history. In response, the district court decided not to count Suddreth's 1995 DUI conviction. The judge subtracted the one point assigned for that conviction based on his own "rule" that he does not count DUIs unless the underlying crime (in this case, filing false income tax returns) has some "driving relationship or some alcohol relationship." J.A. 46. By refusing to count the DUI, the district court lowered Suddreth's criminal history category from III to II.

The district court clearly misapplied the guidelines. It erred by reducing Suddreth's criminal history category based on its rule that DUIs are not counted unless the underlying crime is related to alcohol or driving. This rule runs contrary to the pertinent application note for guideline § 4A1.2, n.5 (Definitions and Instructions for Computing Criminal History), which provides: "Convictions for driving while intoxicated or under the influence . . . are counted. Such offenses are not minor traffic infractions within the meaning of § 4A1.2(c)."

Because there is no articulated alternative basis in the record upon which we might affirm the downward departure, we must remand. *See Williams v. United States*, 503 U.S. 193 (1992). On remand, the district court may consider whether another permissible ground exists to warrant a finding that the "defendant's criminal history category significantly over-represents the seriousness of [his] criminal history or the likelihood that [he] will commit further crimes." § 4A1.3.

## B. *Offense Level*

The government further contends that the district court improperly granted Suddreth a downward departure based on his accountant's egregious conduct. We agree.

The offense level for Suddreth's criminal conduct is based on the resulting "tax loss" to the government, *i.e.*, how much tax Suddreth failed to pay as a result of incorrectly reporting his income. At sentencing, Suddreth and the government stipulated that the total tax loss for 1993 and 1994 was approximately $128,000. The district court adopted the stipulation as its finding. Based on the applicable tax loss table (§ 2T4.1(J)), Suddreth's offense level was 15.

After stipulating to the tax loss and resulting offense level, Suddreth moved the court to depart downward to level 9. Suddreth argued that his offense was outside the heartland because he relied so substantially on Einstein, and because Einstein did such an egregiously poor job in preparing the returns. The government contended that the jury had already passed on that question when it rejected Suddreth's good faith reliance defense at trial.

The district court granted Suddreth a downward departure. Addressing Suddreth, the court stated:

> I think there is no question that you knew your taxes weren't being paid in full. I think you were grossly dis-serviced as was the government . . . by this so-called accountant who made this offense far worse than it would have been. J.A. 78.

The court reduced Suddreth's offense level from 15 to 12 and sentenced him to 12 months. By departing downward three levels, the court effectively reduced the tax loss from the agreed to amount of approximately $128,000 to less than $23,500.

A district court "may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . . .'" § 5K2.0 (citing 18 U.S.C. § 3553(b)). The Guidelines specifically outline certain factors that are either encouraged, forbidden, or discouraged as bases for departures. *See United States v. Rybicki*, 96 F.3d 754,757 (4th Cir. 1996). Also, departures may be granted based on factors that are "unmentioned" in the Guidelines. *See id.* at 757. Unmentioned factors may justify a departure only when:

> the structure and theory of both relevant individual guidelines and the Guidelines as a whole indicate that they take a case out of the applicable guideline's heartland. The interpretation of whether the Guidelines' structure and theory allow for a departure is . . . a legal question subject to *de novo* review to determine whether the district court abused its discretion. *Id.* (internal citation and quotations omitted).

Departures based on unmentioned factors should be awarded highly infrequently. *Id.*

Reliance on an accountant is an unmentioned factor under the Guidelines. Suddreth argues that his substantial reliance on his incom-

petent accountant takes his case outside the heartland of false tax return filing cases. We disagree.

First, it is not uncommon for a person, like Suddreth, who intends to file a false tax return, to rely on or even act in consort with an accountant. It is not unusual, because a false filer will no doubt appreciate the perceived protection of having the imprimatur of his accountant on the return. If caught, the false filer, like Suddreth, can always try to transfer the blame to the tax preparer. Suddreth advanced this defense before the jury, but it failed.

In deciding that Suddreth's case was outside the heartland, the district court focused primarily on Einstein's shoddy work. Although Einstein's performance may well have been unprofessional, we believe that the district court's focus minimized Suddreth's culpability for his own misdeeds. The evidence demonstrated that Suddreth preferred cash transactions and purposefully kept very few records that could be used to verify income. Moreover, the jury necessarily found and the evidence was overwhelming that Suddreth knew that he vastly under-reported his income. Even though Einstein had a duty to prepare Suddreth's returns accurately,[2] Suddreth knew how much money he was diverting from PEC for his personal use and the extent of his personal spending. Suddreth was required by law not to file the return if he believed (which he did) that it understated his income. Suddreth's case is not the highly infrequent one that warrants a downward departure.

Second, granting the downward departure in this case is inconsistent with the structure and theory of the relevant guidelines. The district court granted the departure because it believed that Einstein was also at fault for the tax loss.[3] The relevant guidelines do not provide

---

[2]The district court seemed most troubled with Einstein's adding $80,000 in income on Suddreth's 1993 return based on Einstein's estimate of Suddreth's spending habits. Regardless of whether this approach was legitimate, the resulting inclusion of the estimated income actually lessened the tax loss for which Suddreth was held accountable.

[3]By stating that Einstein "made this offense far worse than it would have been," the district court ruled, in effect, that Suddreth knew he was breaking the law but did not know how badly he was breaking the law. There is no evidence that Suddreth intended some lesser tax loss than he had stipulated to for purposes of sentencing.

for a downward departure for the false tax filer based on the wrongdoing of his tax preparer. To the contrary, in cases in which the tax preparer is found guilty of aiding or assisting the taxpayer in filing a false return, the guidelines provide for an enhanced sentence for the tax preparer, not a reduced sentence for the false return filer. § 2T1.4(b)(1). In this case, the government chose not to prosecute Einstein, so the enhancement was not available to the district court. Even so, it was inconsistent with the structure and theory of the guidelines to grant Suddreth a downward departure based on the alleged wrongdoing of Einstein.

## III.

Therefore, we affirm the district court's denial of Suddreth's motion for judgment of acquittal, and we reverse the reduction of Suddreth's criminal history category from level III to level II and the downward departure of Suddreth's offense level. We remand for resentencing consistent with this opinion.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*