TRAXLER, Circuit Judge,
concurring in the result.
I fully concur in the majority’s analysis of the constructive amendment issue, and I concur in result reached by my friends as to the section 924(c) charge. I write separately, however, because I believe that the evidence supporting the section 924(c) conviction, viewed in the light most favorable to the government, easily is sufficient to support the jury’s verdict.
As we have made clear, section 924(c) “requires the government to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime. However, whether the firearm served such a purpose is ultimately a factual question.” United States v. Lomax, 293 F.3d 701, 705 (4th Cir.2002).
When making this factual determination, the fact finder is free to consider the numerous ways in which a firearm might further or advance drug trafficking. For example, a gun could provide a defense against someone trying to steal drugs or drug profits, or it might lessen the chance that a robbery would even be attempted. Additionally, a gun might enable a drug trafficker to ensure that he collects during a drug deal. And a gun could serve as protection in the event that a deal turns sour. Or it might prevent a transaction from turning sour in the first place. Furthermore, a firearm could help a drug trafficker defend his turf by deterring others from operating in the same area.

Id.

In Lomax; this court specified some of the factors that a jury might rely upon to find that a gun furthered a drug trafficking crime, such as the nature of the drug activity at issue, the kind of gun, the general accessibility of the gun, and the proximity of the gun to drugs or drug proceeds. See id. This list of factors, however, is not exhaustive, and we have never required that any particular number of them must point towards a connection between the gun and the crime before a conviction could be sustained.
Applying the Lomax standards to the evidence presented at trial, I think the evidence was clearly enough to permit the jury to conclude that Milbourne, an admitted drug dealer, possessed the gun in furtherance of the drug-trafficking crime alleged in count two of the indictment. During the search of the apartment, law enforcement officers found Milbourne’s jacket in the closet of the master bedroom that Milbourne shared with his girlfriend. In the pocket of the jacket was a plastic bag that contained numerous small plastic baggies, each of which contained a small quantity of marijuana. Under the mattress in that bedroom was a loaded 9-mm semi-automatic pistol that Milbourne admitted belonged to him and that he had bought from his drug supplier.* See *870 United States v. White, 875 F.2d 427, 433 (4th Cir.1989) (“[I]t is not unreasonable to recognize that weapons have become tools of the trade in illegal narcotics operations.” (internal quotation marks omitted)). Milbourne is a convicted felon, which makes it illegal for him to possess a pistol, and the loaded gun was easily accessible to anyone who knew where it was hidden. In my view, this evidence could easily support a conclusion that Milbourne used the pistol to protect himself and the drugs he was selling. The government’s evidence was thus more than enough to support Milbourne’s section 924(c) conviction.

 The majority states that the handgun possessed by Milbourne is a common type of gun, a fact that the majority apparently believes points away from the conclusion that the gun was possessed in furtherance of a drug-trafficking crime. Since there is no evidence in the record about the ubiquity of 9-mm semiautomatic weapons, I am not certain of the *870 propriety of this observation. But if such observations are proper in this case, I would note by belief that Milbourne’s firearm is the weapon of choice among drug dealers.