**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-4607**

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

LARRY ANTHONY CLYBURN, a/k/a Shoan Clyburn,

Defendant - Appellee.

**No. 05-4631**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LARRY ANTHONY CLYBURN, a/k/a Shoan Clyburn,

Defendant - Appellant.

Appeals from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, Chief District Judge.  (CR-04-50)

Argued:  March 17, 2006                     Decided:  May 17, 2006

Before GREGORY and DUNCAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

———————————

Reversed and remanded in part; affirmed in part by unpublished opinion. Judge Duncan wrote the opinion, in which Senior Judge Hamilton joined. Judge Gregory wrote a separate concurring opinion.

———————————

**ARGUED:** John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellant/Cross-Appellee. Michael Allen Bragg, Abingdon, Virginia for Appellee/Cross-Appellant. **ON BRIEF:** Jean B. Hudson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellant/Cross-Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

DUNCAN, Circuit Judge:

The government appeals from the district court's grant of Larry Clyburn's Motion for Judgment of Acquittal on Count Six of a seven-count indictment: possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Clyburn cross-appeals from the district court's denial of his Motion for Judgment of Acquittal on Count One of the indictment: conspiracy to manufacture fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Because, based on the evidence adduced at trial, a rational trier of fact could find the essential elements of both crimes beyond a reasonable doubt, we reverse the grant of judgment of acquittal as to Count Six of the indictment and affirm the denial of judgment of acquittal as to Count One of the indictment.

I.

On August 11, 2003, law enforcement officers executed a search warrant on Clyburn's residence. In addition to baggies containing methamphetamine, the officers found multiple items associated with the manufacture of methamphetamine, including Sudafed tablets, plastic tubing, coffee filters with red residue, flasks and a Pyrex dish. The greatest concentration of these items was found in the master bedroom.

The officers also found a Mossberg 20-gauge shotgun behind the door of the master bedroom. The shotgun was loaded with six shells containing "seven and a half shot."[1]

The officers arrested Clyburn, who agreed to talk to DEA special agent Brian Snedeker. Clyburn stated that he had learned to manufacture methamphetamine from an individual named George Harper. Clyburn also stated that he had manufactured methamphetamine, employing the so-called "red phosphorous" method, every one to two weeks for six months, using 200 thirty milligram tablets, or six grams, of pseudoephedrine on each occasion. According to Snedeker's testimony at trial, the red phosphorous method yields 0.59 to 0.78 grams of methamphetamine from every gram of pseudoephedrine.

On June 2, 2004, law enforcement officers returned to Clyburn's residence, where Snedeker observed empty cold medicine packs on top of trash cans located outside the back door. Clyburn admitted to Snedeker that he had manufactured methamphetamine five or six times since his arrest in August 2003, including once on May 30, 2004, at the residence of James and Joy Lovell. Clyburn was arrested again.

_____

[1]Although shotguns, like rifles and handguns, can fire a single projectile, shotgun ammunition typically consists of a shell containing a load of small pellets. These pellets, which become projectiles when the shotgun is fired, are available in several sizes. "Seven and a half shot" refers to a pellet size used primarily for hunting small birds and rabbits.

That same day, law enforcement officers executed a search warrant on the Lovells' residence. The officers found multiple items associated with the manufacture and use of methamphetamine, including filters, plastic tubing, matchbooks with the striker plates removed and glass pipes used for smoking methamphetamine.

The grand jury returned a seven-count indictment. Count One charged Clyburn with conspiring, from on or about February 11, 2003, until on or about May 30, 2004, with the Lovells and others known and unknown to the grand jury to manufacture fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. 841(a)(1). Count Six charged him with on or about August 11, 2003, knowingly using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. 924(c)(1).

Clyburn received a jury trial. At the close of the government's case, he moved for acquittal and directed verdict as to Count Six. The district court took this motion under advisement. At the close of the evidence, Clyburn moved for judgment of acquittal as to Count One. The district court denied this motion. The jury returned a verdict of guilty on all seven counts of the indictment.

Clyburn subsequently moved for judgment of acquittal notwithstanding the verdict for Counts One and Six, claiming that

5

the evidence was insufficient to sustain the convictions.  The district court denied the motion as to Count One and granted the motion as to Count Six.

## II.

Where, as here, a motion for judgment of acquittal is based upon insufficiency of the evidence, we review the district court's decision de novo regardless of whether the district court granted or denied the motion.  See United States v. Lentz, 383 F.3d 191, 199 (4th Cir. 2004) (review of grant of judgment of acquittal based upon insufficiency of the evidence), cert. denied, 125 S. Ct. 1828 (2005); United States v. Gallimore, 247 F.3d 134, 136 (4th Cir. 2001) (review of denial of judgment of acquittal based upon insufficiency of the evidence).  In doing so, if, viewing the evidence in the light most favorable to the government, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt, we must sustain the fact finder's verdict.  See Lentz, 383 F.3d at 199; United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002).

A.

The government claims that, because it presented sufficient evidence in its case-in-chief[2] from which the jury could have found beyond a reasonable doubt that Clyburn possessed a firearm in furtherance of a drug trafficking crime, the district court erred in granting Clyburn's motion as to Count Six.  We agree.

The elements of a § 924(c) violation are the commission of a crime of violence or a drug trafficking crime and either (1) using or carrying a firearm during and in relation to the crime or (2) possessing a firearm in furtherance of the crime.  18 U.S.C. § 924(c).  The jury found Clyburn guilty of Counts One through Five of the indictment, each of which constitutes a drug trafficking crime under § 924(c).[3]  Clyburn does not challenge those

---

[2]Where, as here, the district court reserves its decision on a motion of judgment of acquittal made at the close of the government's evidence, it "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).  An appellate court must base its review of the district court's decision on the same evidence.  See United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005); Fed. R. Crim. P. 29 advisory committee's note (1994 Amendments).

[3]As used in § 924(c), "the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.)."  18 U.S.C. § 924(c)(2).
Clyburn does not dispute that each of the following counts of the indictment, being a felony punishable under the Controlled Substances Act, constitutes a drug trafficking crime: (1) conspiring to manufacture fifty grams or more of methamphetamine in violation of 21 U.S.C. 841(a)(1); (2) manufacturing fifty grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1); (3) possessing pseudoephedrine with the intent to manufacture

7

convictions, and the government does not argue that he used or carried the firearm during those crimes. Thus, the only question is whether any rational trier of fact could find that Clyburn possessed the shotgun in furtherance of one or more of the drug trafficking crimes.

The mere presence of a firearm at the scene of a drug trafficking offense is insufficient to establish this element of a § 924(c) violation. United States v. Ceballos-Torres, 218 F.3d 409, 414 (5th Cir. 2000). Rather, the government must present evidence indicating that the possession "furthered, advanced or helped forward a drug trafficking crime." Lomax, 293 F.3d at 705. When considering the evidence, however, the fact finder may take into account any of the myriad ways that a firearm might further or advance the drug trafficking crime, including, for example, providing a defense against the theft of drugs, or reducing the probability that such a theft might be attempted. Id. Moreover, this court has recognized a nonexclusive list of factors that might lead a fact finder to conclude that a firearm was possessed in furtherance of a drug trafficking crime:

> "the type of drug activity that is being conducted,
> accessibility of the firearm, the type of weapon, whether

---

methamphetamine in violation of 21 U.S.C. §§ 841(c)(1) and (2); (4) maintaining a place for the purpose of manufacturing methamphetamine in violation of 21 U.S.C. § 856(a)(1); and (5) knowingly and intentionally creating a substantial risk of harm to human life while manufacturing methamphetamine in violation of 21 U.S.C. § 858.

the weapon is stolen, the status of the possession
(legitimate or illegal), whether the gun is loaded,
proximity to drugs or drug profits, and the time and
circumstances under which the gun is found."

Id. (quoting Ceballos-Torres, 218 F.3d at 414-15).

Because a rational trier of fact could find that Clyburn possessed the shotgun in furtherance of a drug trafficking crime, we must sustain the jury's verdict and reverse the district court's grant of judgment of acquittal. Law enforcement officers found the loaded shotgun in a home used for the manufacture of methamphetamine. The shotgun was located in close proximity to both methamphetamine and many of the materials and equipment used for its manufacture. In fact, the shotgun was in the same room as the bulk of the items associated with the manufacture of methamphetamine. Moreover, the jury could infer that the shotgun was readily accessible to anyone who knew of its location behind the bedroom door. Finally, Clyburn's possession of the shotgun was illegal because he was an unlawful user of a controlled substance.[4] See 18 U.S.C. § 922(g)(3). A rational trier of fact could readily find, for instance, that Clyburn possessed the shotgun to protect the drugs that he had manufactured, as well as the place and the means to perform the manufacturing operation.

---

[4]Count Seven of the indictment charged Clyburn with, and the jury found him guilty of, knowingly possessing a firearm as an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3).

9

Clyburn argues that the factors cited in <u>Lomax</u> do not support the jury's finding. He notes that neither the evidence adduced at trial nor common knowledge suggests that methamphetamine manufacturers making the drug for their own use, rather than distribution, arm themselves for protection. He admits that the shotgun was accessible,[5] loaded, and in the same room as the methamphetamine, but points out that it is not the type of weapon normally associated with drug trafficking, that it was loaded with "bird-shot,"[6] and that the methamphetamine was in closed containers. The weapon was not stolen, and Clyburn contends that the fact that his possession was illegal because he was a drug user does not aid the analysis of whether the firearm was used in

---

[5]Clyburn subsequently argues that the fact that he made no effort to retrieve the shotgun when law enforcement officers entered his home is proof that it was not accessible. Clyburn's inaction does not prove inaccessibility. Trial testimony established that the law enforcement officers announced their presence before entering the home and finding Clyburn in the bed with a female companion. In light of those circumstances, scenarios other than inaccessibility exist to explain Clyburn's failure to retrieve the shotgun, including the failure to notice the officers' presence in time and the decision not to confront law enforcement officers with a loaded firearm.

[6]The shells in the shotgun contained seven and a half shot, ammunition used primarily for bird and rabbit hunting. However, the shotgun was not configured for hunting. Virginia law requires that a shotgun, when being used for hunting, contain a plug, a device designed to limit its capacity to a total of three shells. Va. Code Ann. § 29.1-519(A)(2). Clyburn's shotgun did not have a plug and was loaded with six shells. Although Virginia law does not require that a plug limiting the shotgun's capacity to three shells be installed unless the weapon is being used for hunting, the jury was entitled to consider the shotgun's configuration when considering the purpose of Clyburn's possession.

furtherance of a drug trafficking crime. Finally, Clyburn notes that the shotgun was found during a raid on his home in a rural part of southwest Virginia, an area where households typically contain firearms, at a time when no drug manufacturing or use was taking place.

The facts cited by Clyburn do not compel the conclusion that he possessed the shotgun for purposes other than furthering his drug trafficking crimes, even if they could support such a conclusion. Although a 20-gauge shotgun may not be the firearm of choice for individuals engaged in drug trafficking, a jury could conclude that a loaded shotgun, even one loaded with bird shot, would serve to protect Clyburn's operation. It could also conclude that Clyburn would be more likely to risk conviction for illegal possession of a firearm--a conviction he ultimately received--to protect his manufacturing operation and the product thereof than to engage in recreational hunting. Finally, the fact that the methamphetamine was in closed containers with no drug manufacturing or use taking place when the law enforcement officers executed the search warrant does not mean that the shotgun was not being used to protect the methamphetamine. "'[I]f the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe.'" Lentz, 383 F.3d at 199 (quoting United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997)). In the present case, the jury decided to believe that Clyburn

11

possessed the shotgun in furtherance of a drug trafficking crime, and this was a reasonable interpretation of the evidence.

B.

On cross-appeal, Clyburn claims that the district court erred in denying his motion as to Count One because the government presented insufficient evidence from which the jury could have found beyond a reasonable doubt that Clyburn engaged in a conspiracy to manufacture fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine. Clyburn concedes that the government carried its burden of proof with respect to the existence of a conspiracy between him and the Lovells. At oral argument, Clyburn's counsel further conceded that Clyburn had manufactured more than fifty grams of methamphetamine. Clyburn argues only that the government failed to adduce sufficient evidence to prove that the conspiracy's purpose was to manufacture at least fifty grams of methamphetamine. We disagree.

The relevant evidence is undisputed. Clyburn admitted that he had been taught to manufacture methamphetamine by an individual named George Harper and had been manufacturing the drug for approximately six months before the search warrant was executed at his home in August 2003. He also admitted that he had obtained additional information about manufacturing methamphetamine from his ex-girlfriend and her acquaintances. Finally, he admitted that,

12

after his arrest in August 2003, he had told the Lovells what he needed to manufacture methamphetamine, that they had provided the materials, and that he had manufactured methamphetamine using the materials provided by them on multiple occasions.

Based on this evidence, the jury reasonably could have concluded that all of the individuals who knowingly assisted Clyburn, by providing either knowledge or materials, engaged in a single conspiracy with the common objective of manufacturing methamphetamine. A conspiracy can exist without every member of the conspiracy knowing its full scope or all of the other members and without every member participating in all of its activities or for the entire length of its existence. United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996) (en banc). Therefore, the jury reasonably could have concluded that the conspiracy to manufacture methamphetamine began when Harper taught Clyburn the manufacturing method and continued through Clyburn's interactions with his ex-girlfriend, her acquaintances and the Lovells, with Clyburn acting as the linchpin for the conspiracy. The result of that conspiracy was the manufacture of more than fifty grams of methamphetamine.[7]

---

[7]Although Clyburn did not concede at trial that he had manufactured more than fifty grams of methamphetamine, the jury reasonably could have reached that conclusion based on Snedeker's testimony as to the frequency with which Clyburn engaged in the manufacturing process, the amount of pseudoephedrine he used each time and the yield of the manufacturing method.

13

The jury reasonably could have inferred that the object of the conspiracy was to manufacture that amount of methamphetamine.[8]

                                III.

For the foregoing reasons, we reverse the district court's grant of Clyburn's motion for judgment of acquittal notwithstanding the verdict as to Count Six of the indictment and remand to the district court to reinstate the jury's verdict of guilty.  We affirm the district court's denial of Clyburn's motion for judgment of acquittal notwithstanding the verdict as to Count One of the indictment.

                                    REVERSED AND REMANDED IN PART;
                                              AFFIRMED IN PART

_____

[8]This conclusion does not, as suggested in the concurring opinion, constitute impermissible speculation.  It simply points, in response to a challenge to the sufficiency of the evidence, to evidence adduced at trial from which the jury could have concluded that Clyburn and those individuals who provided him with knowledge and materials for his manufacturing operation engaged in a single conspiracy, the intent of which was the manufacture of methamphetamine for the use of the individuals involved.

GREGORY, Circuit Judge, concurring:

I write separately to express my reasons for affirming Clyburn's conviction for conspiracy to manufacture fifty grams or more of a mixture containing a detectable amount of methamphetamine under Count One. Clyburn concedes that he engaged in a conspiracy with the Lovells to manufacture methamphetamine on May 30, 2004, and only challenges the amount attributable to that conspiracy. According to Clyburn's trial testimony, the Lovells asked him to make methamphetamine for a party they were hosting at their residence. J.A. 191-92. The Lovells supplied Clyburn with two boxes of matches and four boxes of thirty-milligram Sudafed pills. Clyburn cooked and gassed the pseudoephedrine contained in the pills into a liquid form at his own residence. J.A. 213-14. Clyburn admitted that he then brought over a bottle filled with approximately 500 grams of "water which contained a detectable amount of methamphetamine." J.A. 192, 203, 213-14.[*] Thus, Clyburn's direct testimony supported the jury's finding that he manufactured at least fifty grams of a mixture containing a detectable amount of methamphetamine as part of a conspiracy with the Lovells. I would therefore resolve the merits of this claim on that testimony alone.

_____

[*]Although Clyburn claimed that the methamphetamine contained in the water was not usable, he admitted he frequently injected methamphetamine into his arm or leg with a syringe filled with water and methamphetamine. J.A. 172, 203-04.

15

The majority proceeds, however, to delve into other conspiracies that may have occurred during the six-month period in which Clyburn manufactured methamphetamine. In so doing, the majority impermissibly veers toward speculation by attributing the total amount of methamphetamine (approximately fifty to ninety grams) Clyburn had manufactured during this six-month period to an overarching conspiracy between Clyburn, his various girlfriends, his girlfriends' unidentified acquaintances, Harper, and the Lovells. There was no evidence to support the theory that Clyburn was the "lynchpin" of these numerous, smaller conspiracies, which began and ended at various times during the six-month period. In effect, the majority simply collapses distinct instances of Clyburn's methamphetamine production with unrelated individuals into a single conspiracy between all of these individuals based solely on the fact that they occurred during the six-month period. Cf. United States v. Barsanti, 943 F.2d 428, 439 (4th Cir. 1991) ("A single conspiracy exists where there is one overall agreement, . . . or one general business venture. . . . Whether there is a single conspiracy depends upon the overlap of [the] main actors, methods and goals." (internal quotation marks and citations omitted)).

I otherwise concur in the opinion and the judgment.