[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 9, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14627
Non-Argument Calendar

_____

D. C. Docket No. 05-00339-CR-J-33-TEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PATRICK FITZGERALD PORTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 9, 2008)**

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Patrick Porter was convicted on seventeen drug and weapons counts, and he now appeals his convictions on fourteen of those counts and his sentence.

## I.

The following are the facts in the light most favorable to the government, drawing all reasonable inferences in favor of the jury's verdict, which is how we are required to view them at this stage in the proceedings. United States v. Robertson, 493 F.3d 1322, 1329 (11th Cir. 2007).

During the early part of 2005 Porter began buying and reselling large quantities of powder and crack cocaine. Eventually he was purchasing a total of about five ounces of cocaine—around $4000 worth—per week. Over the course of several months Porter bought between two and two-and-a-half kilograms of cocaine for approximately $60,000.

On several occasions while buying drugs, Porter's customers saw him with one of a few different pistols either on his person or in his car. One of these times was when Porter went to collect money from a delinquent customer and, upon finding him gone, showed a semi-automatic pistol to one of the customer's housemates and demanded to know where the customer was. Another time Porter threatened to shoot up the house if he was not paid the money he was owed. One

witness testified to giving Porter two pistols as collateral on a drug debt owed by the witness' girlfriend.

Porter's association with guns was not without consequences. On May 22, 2005 Porter apparently accidentally shot himself in the ankle and had to go to the emergency room. He told a police officer who spoke with him there that he had been shot by a mugger. The officer saved the bullet that the doctors had removed from Porter.

On August 22, 2005 Porter and his girlfriend were driving in his car when he was pulled over for having a tag light. The officer who pulled him over ran Porter's license plate number and discovered that Porter owned the car and that he had previous felony convictions. The officer then wrote Porter a fix-it ticket for the tag light. Porter, however, insisted on exiting the car to look at the light. When he did so, he left his door open and another officer at the scene saw the butt of a gun under the driver's side floor mat. The officers then arrested Porter and searched his car.

The gun turned out to be a loaded .25 caliber MP 25 Raven pistol manufactured in California. Forensic ballistics tests later revealed that the bullet removed from Porter's ankle a few months before was consistent with one fired from the Raven pistol, but there was no way to determine whether the bullet was

3

actually fired from that gun. The search of Porter's car also uncovered a bag containing 13.5 grams of powder cocaine under the passenger seat and a bag containing 16.4 grams of crack cocaine wrapped in a black shirt in passenger-side door well. Subsequent tests failed to produce any discernable fingerprints on the gun or on either bag of drugs.

After Porter was arrested his wife—not his girlfriend—picked up his personal effects from the jail where he was held. These included two cellular phones. While in jail Porter spoke to his wife several times over the phone. Over the course of these conversations, Porter instructed his wife to answer his cell phones and collect from various people who owed him money. Porter's wife reported back to him on her attempts to collect his money, which were met with mixed results.

While in jail Porter met Steven Hoskins, another inmate being held on a drug charge. Porter told Hoskins that he had sold powder and crack cocaine starting in 2005 and that he kept a gun with him at all times in case of trouble. Porter went on to say that the gun and drugs found in his car when he was arrested belonged to him.

A federal grand jury indicted Porter on the following: one count of conspiracy to distribute crack and powder cocaine in violation of 21 U.S.C. § 846;

five counts of distributing powder and crack cocaine in violation of 21 U.S.C. § 841(a)(1); two counts of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1); one count of distributing powder cocaine in violation of 21 U.S.C. § 841(a)(1); seven counts of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Porter chose to represent himself, and the district court appointed him standby counsel. Porter then pleaded not guilty to all counts. Before trial both parties stipulated that Porter had prior felony convictions.

At trial the government put on several witnesses who testified to the facts recounted above. Porter declined to introduce any evidence on his own behalf. The jury convicted Porter on all seventeen counts. More than seven days after his conviction but before sentencing Porter filed a motion for new trial, contending that Hoskins had committed perjury. Porter supported this allegation with an affidavit from William Koster, another inmate at the jail. Koster alleged in the affidavit that Hoskins had asked him to testify against Porter and that he saw Hoskins look through Porter's legal papers while in jail. Additionally, Porter contended that the government had impermissibly amended one of the distribution counts in the indictment. The court denied Porter's new trial motion.

5

The probation office prepared a presentence investigation report. Porter objected to the PSR, arguing that it impermissibly attributed drug quantities to him because they had not been found by a jury. At sentencing Porter also objected to the drug quantity calculation and argued that the mandatory minimum sentence that applied to his convictions for carrying a firearm in furtherance of a drug offense was unconstitutional. He also renewed his motion for a new trial.

Porter called three witnesses at sentencing to offer mitigating testimony, one of whom was Koster. Koster reasserted the allegations in his affidavit but also admitted to having been convicted of fraud, first-degree attempted murder, and shooting into an occupied vehicle with a deadly weapon. The court again denied Porter's motion.

The district court then proceeded to overrule all of Porter's objections and adopt the PSI. Then, after considering the guideline range, the court sentenced Porter to a total of 182 years imprisonment. Porter, now represented by counsel, timely appealed.

## II.

Porter first contends that the district court erred when it instructed the jury on one of the distribution charges because the instruction amounted to a constructive amendment of the indictment. A constructive "amendment occurs

when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." United States v. Keller, 916 F.2d 628, 634 (11th Cir. 1990). This is in contrast to a variance, which "occurs when the facts proved at trial deviate from the facts contained in the indictment but the essential elements of the offense are the same." Id. A constructive "amendment is per se reversible error, while a variance requires the defendant to show that his rights were substantially prejudiced by the variance in order to be entitled to a reversal." Id. at 633. Porter did not object to the jury instruction either when it was given or earlier, so we review only for plain error. Id. at 636.

For the part of the conviction that Porter challenges on these grounds, the indictment charged him with distributing crack cocaine. However, the jury instruction, as read to the jury by the court, stated that Porter could be found guilty of that count if he had distributed either cocaine or crack cocaine.

The difference between the jury instruction and the indictment is only about which controlled substance or substances Porter distributed. Because the statute does not specify a particular controlled substance, 21 U.S.C. § 841(a)(1), the identity of the controlled substance that the defendant distributed is not an "essential element[] of the offense contained in the indictment." Keller, 916 F.3d

7

at 634. Therefore, we have held that there is no constructive amendment simply because the controlled substance specified in the indictment and the one in the jury instructions are different. United States v. Rutherford, 175 F.3d 899, 906 (11th Cir. 1999).

Even if this difference were a variance, it would not be reversible error. For a variance to be reversible error it must result in substantial prejudice to the defendant. Keller, 916 F.3d at 633. Porter has not identified any prejudice from the difference between the indictment and the jury instructions, and he has therefore waived the issue, Kelliher v. Veneman, 313 F.3d 1270, 1274 n.3 (11th Cir. 2002). Absent any error, there is no plain error.

**III.**

Porter next contends that the five counts in the indictment charging him with distributing both powder and crack cocaine were duplicitous. "A count in an indictment is duplicitous if it charges two or more 'separate and distinct' offenses." United States v. Schlei, 122 F.3d 944, 977 (11th Cir. 1997). We need not determine whether these charges were in fact duplicitous because Porter waived this issue by failing to raise it before trial. See Fed. R. Crim. P. 12(b)(3)(B).

## IV.

Porter's third contention is that the district court erred in denying his Federal Rule of Criminal Procedure 33(b)(1) motion for a new trial in light of Koster's testimony that Hoskins perjured himself at Porter's trial. A defendant who, after trial, discovers evidence previously unknown to the government is entitled to a new trial only if: "(1) the evidence was in fact discovered after trial; (2) the defendant exercised due care to discover the evidence; (3) the evidence was not merely cumulative or impeaching; (4) the evidence was material; and (5) the evidence was of such a nature that a new trial would probably produce a new result." United States v. Starrett, 55 F.3d 1525, 1554 (11th Cir. 1995) (citation and internal quotation marks omitted). We review the denial of a motion for a new trial only for abuse of discretion. United States v. Thompson, 422 F.3d 1285, 1294–95 (11th Cir. 2005). "'Motions for a new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and should be granted only with great caution. Indeed, the defendant bears the burden of justifying a new trial.'" United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc) (citation omitted).

Koster's testimony that Hoskins looked through Porter's legal papers in jail and tried to recruit Koster to testify against Porter was relevant only to impeach

Hoskins, so it fails to meet the third element for obtaining a new trial. Starrett, 55 F.3d at 1554. "The failure to satisfy any one of these elements is fatal to a motion for new trial." United States v. Lee, 68 F.3d 1267, 1274 (11th Cir. 1995). The district court did not err in denying Porter's motion for a new trial.

## V.

Porter's fourth contention is that the district court erred by not granting his motion for a judgment of acquittal on each of the seven counts of possessing a firearm in furtherance of drug trafficking. We review de novo a district court's denial of a motion for a judgment of acquittal. United States v. Dulcio, 441 F.3d 1269, 1276 (11th Cir. 2006). In doing so, we consider the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility determinations in favor of the jury's verdict. United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilty," United States v. Harris, 20 F.3d 445, 453 (11th Cir. 1994), because a "jury is free to choose among reasonable constructions of the evidence," United States v. Vera, 701 F.2d 1349, 1357 (11th Cir. 1983) (quotation marks omitted).

A defendant is guilty of possessing a firearm in furtherance of a drug trafficking crime when he: "(1) knowingly (2) possesse[s] a firearm (3) in furtherance of any drug trafficking crime for which he could be prosecuted in a court of the United States." United States v. Woodard, 531 F.3d 1352, 1362 (11th Cir. 2008).

Porter first argues that the government did not introduce sufficient evidence on any of the possession of a firearm in furtherance of a drug trafficking offense counts because there was insufficient evidence to identify the specific firearms he possessed. This argument is without merit. The term "firearm" in § 924(c)(1) is a generic one, meaning that the government need not plead or prove that the defendant possessed a particular gun or kind of gun to prove a violation of the statute. See United States v. Williams, 334 F.3d 1228, 1231–32 (11th Cir. 2003).

Porter next argues that there was insufficient evidence on the § 924(c)(1) counts because the drug offenses that the possession of a firearm furthered were duplicitous. Because we have already held that he waived any claim that his charges were duplicitous, this argument also fails.

Porter's third argument is that no reasonable jury could have found him guilty because the government failed to introduce evidence of the specific dates on which he possessed the firearm in furtherance of a drug crime. However, proving

11

the date a violation occurred is not an element of § 924(c)(1).  See also United

States v. Reed, 887 F.2d 1398, 1403 (11th Cir. 1989) ("When the government

charges that an offense occurred 'on or about' a certain date, the defendant is on

notice that the charge is not limited to the specific date or dates set out in the

indictment.  Proof of a date reasonably near the specified date is sufficient."

(internal citations omitted)).  Further, each of the possession in furtherance counts

was associated with a drug count the approximate date of which was included in

the indictment, and Porter does not argue that there was insufficient evidence of

when the events described in the drug counts occurred.

Porter's fourth argument is that the evidence at trial was insufficient to

show that he was "carrying" the Raven pistol that was found under the floor mat in

the car when he was arrested because his girlfriend was in the car and arguably

had equal access to the gun.  This argument is inapposite.  Although § 924(c)(1)

does include the offense of using or carrying a firearm during and in relation to a

drug trafficking crime, Porter was charged with and convicted of possessing a

firearm in furtherance of a drug trafficking crime, which is a different offense.

The two crimes have different elements, and the offense of possessing a firearm in

furtherance of a drug trafficking crime was added to expand the statute after the

Supreme Court's decision in Bailey v. United States, 516 U.S. 137, 116 S. Ct. 501

12

(1995), interpreted the "during and in relation to" language narrowly. See United States v. Timmons, 283 F.3d 1246, 1249 (11th Cir. 2002). Insofar as Porter's argument is that the government did not present enough evidence that he "possessed" the firearms, we deal with that issue next.

There is sufficient evidence in the record for a reasonable jury to find that Porter possessed a firearm on each of the occasions for which he was convicted. "With firearms, possession may be either actual or constructive. Like constructive possession of drugs, the government can establish constructive possession of a firearm by proving 'ownership, dominion, or control over the firearm.'" United States v. Thompson, 473 F.3d 1137, 1143 (11th Cir. 2006) (internal quotation marks, citations, and alteration omitted). Here, the government produced ample evidence of Porter possessing firearms during his drug trafficking. Hoskins testified that Porter admitted to carrying a gun with him at all times while engaged in drug trafficking. Although this testimony alone would be enough, there is more evidence. Several witnesses testified that they saw Porter carrying a gun or having one in his car when they bought drugs from him. Porter obviously had a gun when he accidentally shot himself. Porter also wielded a gun when he tried to locate his delinquent customer and threatened to shoot up another witness' house if he was

13

not paid. From all of this, a reasonable jury could conclude that Porter had a firearm with him when he engaged in each of his drug offenses.

There is also enough evidence for a reasonable jury to conclude that Porter used firearms in furtherance of drug trafficking crimes. The "in furtherance" element "requires that the prosecution establish that the firearm helped, furthered, promoted, or advanced the drug trafficking." Timmons, 283 F.3d at 1252. This in turn requires "'a showing of some nexus between the firearm and the drug selling operation.'" Id. at 1253 (citation omitted). A non-exclusive list of factors that can establish this nexus includes: (1) "the type of drug activity that is being conducted"; (2) "accessibility of the firearm"; (3) "the type of the weapon"; (4) "whether the weapon is stolen"; (5) "the status of the possession (legitimate or illegal)"; (6) "whether the gun is loaded"; (7) "proximity to the drugs or drug profits"; and (8) "the time and circumstances under which the gun is found." Id. (quoting United States v. Ceballos-Torres, 218 F.3d 409, 415 (5th Cir. 2000)).

Porter's stated purpose in possessing firearms was for protection while conducting drug deals. This is one way in which having a "firearm helped, furthered, promoted, or advanced the drug trafficking." Timmons, 283 F.3d at 1252. Witnesses testified that they saw Porter's guns either on his person or in his car during drug deals, meaning that the weapons were accessible and in close

14

proximity to the drugs. One could reasonably infer from the fact that the Raven pistol was loaded when Porter was arrested and from the fact that an unloaded gun is ineffective protection that Porter's guns were loaded when he engaged in drug trafficking. Finally, at least two of Porter's guns were not registered to him because they were given to him as collateral on a drug debt. Considering all of the above factors we conclude that there was sufficient evidence that the firearms were possessed in furtherance of drug trafficking.

## VI.

Porter next contends that the district court erred in denying his motion for a judgment of acquittal on the felon in possession count. Again, we review de novo a district court's denial of a motion for a judgment of acquittal, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." Browne, 505 F.3d at 1253. Porter stipulated at trial that he had been convicted of a felony before being arrested on August 22, 2005. His argument is that there was insufficient evidence for a reasonable jury to find that he possessed the firearm because when the police found it under the driver's side floor mat both Porter and his girlfriend were in the car.

15

A defendant possesses a firearm within the meaning of the felon in possession statute, 18 U.S.C. § 922(g), when he actually possesses it or has constructive possession of it.  United States v. Gonzalez, 71 F.3d 819, 834 (11th Cir. 1996).  Because the Raven pistol was not found on Porter's person, the question is whether it was constructively in his possession.  Id.  "Constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control."  United States v. Greer, 440 F.3d 1267, 1271 (11th Cir. 2006).

There was sufficient evidence for a reasonable jury to find that Porter had constructive possession of the pistol found in his car when he was arrested.  Porter admitted to Hoskins that he owned the pistol that was found in his car when he was pulled over.  Further, by stating that he kept a gun with him for protection whenever he dealt drugs, Porter essentially acknowledged that he had the power and intent to exercise control over the gun because a gun that he did not control would not serve his purpose.

## VII.

Porter's penultimate contention is that the district court erred when it sentenced him under the Armed Career Criminal Act, 18 U.S.C. § 924(e), which increases the penalties for defendants convicted of being felons in possession of

16

firearms who have already been convicted of three or more violent felonies or serious drug offenses. He relies on Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005), to argue that the district court improperly looked beyond the existence of his past convictions to see if those convictions were for violent felonies or serious drug offenses, a type of factfinding he asserts should be the sole province of the jury.

However, Porter's reliance on Shepard is misplaced. That case held a court may only look to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information" to determine if the crime to which a defendant has pleaded guilty fits within the common law definitions of the crimes enumerated in § 924(e)(2)(B)(ii). Shepard, 544 U.S. at 26, 125 S. Ct. at 1263. Because the district court did not need to go beyond the charging documents and judgments of conviction to determine that Porter fell under the Armed Career Criminal Act, there was no Shepard violation.

Porter's argument about the jury's province is foreclosed by the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998), which held that a court can apply a statutory increase in the penalty

for a crime based on recidivism without the defendant's earlier convictions having been alleged in his indictment or proven to a jury. Id. at 226–27, 247, 125 S. Ct. at 1222, 1232. The district court did not err in sentencing Porter under the Armed Career Criminal Act.

## VIII.

Porter's final contention is that the district court erred by enhancing his sentencing guideline range based on facts not found by the jury under a beyond-a-reasonable-doubt standard. We have repeatedly held that this is not error. See United States v. Rodriguez, 398 F.3d 1291, 1300 (11th Cir. 2005) (stating that it is not error to apply "extra-verdict enhancements—enhancements based on facts found by the judge that were not admitted by the defendant or established by the jury verdict—that le[a]d to an increase in the defendant's sentence"). As long as the district court does not treat the guidelines as mandatory, determining a defendant's guideline range using facts found under a preponderance-of-the-evidence standard does not violate the constitution. United States v. Smith, 480 F.3d 1277, 1280–81 (11th Cir.), cert. denied, 128 S. Ct. 175 (2007); United States v. Chau, 426 F.3d 1318, 1322–23 (11th Cir. 2005).

**AFFIRMED.**