**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-4693**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

KAD CARSON ELSWICK,

                    Defendant - Appellant.

Appeal from the United States District Court for the Western
District of Virginia, at Abingdon.   James P. Jones, Chief
District Judge.   (1:04-cr-00091-jpj)

Argued: October 31, 2008          Decided: December 31, 2008

Before MICHAEL, SHEDD, and DUNCAN, Circuit Judges.

Affirmed in part, reversed in part, and remanded for
resentencing by unpublished per curiam opinion.   Judge Shedd
wrote a separate opinion concurring in part and dissenting in
part.

**ARGUED:** Marc Seguinót, SEGUINÓT & ASSOCIATES, P.C., McLean,
Virginia, for Appellant.   Jean Barrett Hudson, OFFICE OF THE
UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.
**ON BRIEF:** Julia C. Dudley, Acting United States Attorney,
Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kad Elswick ("Elswick"), was convicted of four counts: Count One, possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); Count Two, possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); Count Three, use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and Count Four, failure to appear in violation of 18 U.S.C. § 3146(a)(1). Elswick appeals all of his convictions except that for failure to appear.

As discussed below, Elswick's challenges to Counts One and Two lack merit, and we affirm as to those. On these facts, however, following the Supreme Court's decision in Watson v. United States, 128 S. Ct. 579 (2007), his conviction under 18 U.S.C. § 924(c)(1)(A) can no longer be supported. We therefore reverse as to that count and remand for resentencing.

I.

Federal agents approached Elswick in September 2004 in connection with an investigation into Larry Blackburn, a Virginia drug dealer. J.A. at 47-48. The agents initially told Elswick that he was not being investigated but that they were merely seeking information regarding a firearm that he had allegedly possessed. J.A. at 64. In the course of the

2

conversation, the agents learned that Elswick was a convicted felon. Subsequently, Elswick was indicted on four counts related to drug possession and distribution, the possession of a firearm, and failure to appear. J.A. at 16-17.

At trial, Eric Woods testified for the government that he had stolen his father's gun in order to trade it for drugs. He claimed that he gave the gun to his friend, Terry Looney, who took the gun into a home and returned without it. J.A. at 22-24. Eric Woods did not know who lived in the home or who received the gun from Looney; and Looney did not testify at trial. Later that same day, the two drove to a convenience store parking lot. There, Looney approached a parked car. Elswick was seated in the driver's seat. Eric Woods testified that Elswick gave Looney "a bag" that contained methamphetamine. J.A. at 24-26.

Lloyd Woods, Eric's father, then testified that he received a call from Elswick sometime later. Elswick stated that he had Lloyd Woods's gun and would return the gun to Lloyd Woods in exchange for a payment of $50. Lloyd Woods agreed and drove to Elswick's home where he gave Elswick $50. The gun, however, was not located at Elswick's home, and the two men had to wait until a female arrived with the gun, at which point it was returned to Lloyd Woods. J.A. at 39-40, 82-83.

When questioned by federal agents, Elswick admitted to having bought a gun from two boys that matched the description of that owned by Lloyd Woods. Elswick disputed any implication that drugs were involved in the transaction. J.A. at 49-50. He then claimed that Blackburn, to whom he had sold or pawned the gun, told him to return it to Lloyd Woods since it had a defect. He signed a copy of a statement setting forth those facts. J.A. at 50, 134. At trial, Elswick claimed that the statement he gave to investigators was not true and offered a different account of how he came to sell the gun back to Lloyd Woods. His trial testimony centered on the fact that his long-time live-in girlfriend had bought the gun and that he lied when investigators questioned him because at the time she was dying of cancer and he wanted to protect her. J.A. at 84-85.

Elswick also failed to appear before the court, one of the conditions of his supervised release. Following his jury trial, Elswick was convicted on all counts. He timely filed this appeal.

## II.

Elswick alleges that there is insufficient evidence in the record to support his convictions on possession of methamphetamine with intent to distribute, being a convicted felon in possession of a firearm, and using a firearm in

4

relation to or possessing a firearm in furtherance of a drug crime. Challenges to the sufficiency of evidence are reviewed de novo. United States v. Kelly, 510 F.3d 433, 440 (4th Cir. 2007). A court reviews a jury verdict to determine whether "there is substantial evidence, taking the view most favorable to the Government, to support [the verdict]." United States v. Burgos, 94 F.3d 849, 863 (4th Cir. 1996) (en banc) (citation omitted). The court therefore looks to see whether, based upon the evidence in the record "and the reasonable inferences to be drawn therefrom[,] . . . the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." Id. at 863 (quoting United States v. Powell, 469 U.S. 57, 67 (1984)) (internal quotations omitted); see also Jackson v. Virginia, 443 U.S. 307, 318 (1979) ("[T]he critical inquiry . . . [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."). We discuss each of Elswick's bases for appeal in turn.

A.

Elswick first challenges the sufficiency of the evidence on which his conviction for the possession of methamphetamine with intent to distribute is based.

This challenge is without merit. In order to convict Elswick, the government was required to show that he knowingly

5

possessed the controlled substance in question and intended to distribute it.  See United States v. Randall, 171 F.3d 195, 209 (4th Cir. 1999).  The government here presented eyewitness testimony from Eric Woods that Elswick both possessed and distributed methamphetamine.  Witness testimony that could be credited by a reasonable juror is itself "sufficient to sustain the jury verdict."  United States v. Whittington, 455 F.3d 736, 740 (6th Cir. 2006); see also United States v. Catalan-Vazquez, 211 F. App'x 864, 866 (11th Cir. 2006) (unpublished) (holding that a jury may base its verdict on any testimony not "unbelievable on its face" or "so contrary to the teachings of human experience that no rational person could believe in it" (quoting United States v. Jones, 913 F.2d 1552, 1559 n.7 (11th Cir. 1990))); United States v. Carpenter, 422 F.3d 738, 746 (8th Cir. 2005) (finding that corroboration of witness testimony is not required because credibility is for the jury to determine).  Because a reasonable jury could have found Eric Woods's testimony credible and because that testimony was a sufficient basis for the conviction, Elswick's challenge fails.

## B.

Elswick also raises a challenge to the sufficiency of the evidence supporting his conviction under 18 U.S.C. § 922(g) for

being a convicted felon in possession of a firearm. Proving the offense requires a showing that:

> (1) the defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) the defendant knowingly possessed, transported, shipped, or received, the firearm; and (3) the possession was in or affecting commerce, because the firearm had travelled in interstate or foreign commerce at some point during its existence.

United States v. Langley, 62 F.3d 602, 606 (4th Cir. 1995) (en banc).

Elswick contends that the government failed to demonstrate that he knowingly possessed a firearm. At trial, the government introduced testimony from Lloyd Woods and Elswick's own signed statement to show that Elswick had knowingly possessed the firearm. See J.A. at 40-41, 134. This constitutes evidence sufficient to permit a reasonable jury to conclude that Elswick possessed a gun in violation of the statute.

C.

Finally, Elswick challenges his conviction under 18 U.S.C. § 924(c)(1)(A). The government contends that Elswick does not challenge the sufficiency of the evidence on this conviction, only the application of Watson to his conduct. Appellee's Br. at 19 n.3. While it is true that Elswick frames this argument slightly differently from his other two sufficiency challenges, he does argue for a standard of review that is based upon an

7

insufficiency of the evidence challenge.  Appellant's Br. at 29.

In addition, his Fourth Circuit case law citation applying

Watson to a previously-rendered 924(c)(1) conviction is based

upon a sufficiency of the evidence challenge.  Id. at 30 (citing

United States v. Purnell, 269 F. App'x 313 (4th Cir 2008)

(unpublished)).  Elswick has sufficiently raised the challenge

for this court to be able to review the sufficiency of the

evidence with respect to his 924(c)(1)(A) conviction.

18 U.S.C. § 924(c)(1)(A) has two prongs.[1]  One criminalizes

the use or carrying of a firearm in relation to a drug

---

[1] The full text of the statute reads:

Except to the extent that a greater minimum sentence
is otherwise provided by this subsection or by any
other provision of law, any person who, during and in
relation to any crime of violence or drug trafficking
crime (including a crime of violence or drug
trafficking crime that provides for an enhanced
punishment if committed by the use of a deadly or
dangerous weapon or device) for which the person may
be prosecuted in a court of the United States, uses or
carries a firearm, or who, in furtherance of any such
crime, possesses a firearm, shall, in addition to the
punishment provided for such crime of violence or drug
trafficking crime—

(i) be sentenced to a term of imprisonment of not less
than 5 years;

(ii) if the firearm is brandished, be sentenced to a
term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a
term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A).

trafficking crime. The other prong criminalizes the possession of a firearm in furtherance of a drug trafficking crime. Neither the indictment nor the verdict in Elswick's case distinguished between the use and possession prongs of 924(c)(1)(A).

While this appeal was pending, the Supreme Court decided Watson. In that case, the Court held that an individual who receives a gun in exchange for drugs cannot be said to "use" the gun in relation to a drug trafficking offense. 128 S. Ct. at 586. Thus, in order to show use of a firearm in relation to a drug trafficking offense, the government must prove "*active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." Id. at 581-82 (quoting Bailey v. United States, 516 U.S. 137, 143 (1998)). Following Watson, there is no evidence in the record to substantiate a use charge. The government presented no evidence that Elswick attempted to acquire drugs using the gun, nor that he in any way employed the gun for any purpose related to a drug transaction. The government concedes that Elswick can no longer be held guilty under the use prong of 924(c)(1)(A). Appellee's Br. at 17.

The government argues, however, that Elswick's conviction remains valid because it was premised upon the possession prong. The Supreme Court in Watson did not reach the question of

9

whether the possession prong of 924(c)(1)(A) would apply to situations where a gun was received in exchange for drugs. 128 S. Ct. at 585-86.

In order to convict Elswick for possession of a firearm under 924(c)(1)(A), the government is required to show that Elswick (1) possessed a firearm (2) in furtherance of a drug trafficking crime. While the evidence in the record is sufficient to prove the first element, on these facts we find that the government's proof fails to demonstrate the required connection between the possession of the gun and the drug trafficking crime.

## 1. Possession

The record reflects evidence sufficient to support the charge that Elswick possessed the firearm. Lloyd Woods, a government witness, testified that he received a telephone call from Elswick. Elswick informed Mr. Woods that his gun was available for redemption from Elswick at a price of $50. Mr. Woods went to Elswick's house and met with Elswick, whereupon Elswick informed Mr. Woods that the gun was being brought over. A female arrived, and Mr. Woods paid Elswick the required amount. Elswick then took the gun from the female and handed it to Mr. Woods. J.A. at 40. In his statement to Agent Yoh,

10

Elswick acknowledged having been in possession of the gun.  J.A. 134.

While Elswick testified that his signed statement was false, credibility determinations and conflicting testimony by witnesses are questions for the jury to resolve.  Burgos, 94 F.3d at 862-63 (citing United States v. Lowe, 65 F.3d 1137, 1142 (4th Cir. 1995)).  In this case, the record reflects enough evidence to have enabled a reasonable trier of fact to conclude that Elswick did possess the gun.

## 2. In Furtherance Of

However, on these facts the government has not shown sufficient evidence to permit the conclusion that Elswick's possession was "in furtherance of" a drug trafficking crime as required by the statue.  The Fourth Circuit reads "furtherance" in this statutory scheme according to its plain meaning: "the act of furthering, advancing, or helping forward."  United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) (citations omitted) (finding that this reading accords with the Congressional intent in amending the statute to criminalize possession).  The government therefore bears the burden of presenting evidence that the gun was possessed in furtherance of a drug trafficking crime, which requires demonstrating some connection between the gun and the drug crime.  United States v.

11

McDaniel, No. 06-5051, 2008 WL 3977880, at *1 (4th Cir. Aug. 25, 2008) (unpublished); Lomax, 293 F.3d at 705; see also United States v. Porter, No. 07-14627, 2008 WL 4140283, at *6 (11th Cir. Sept. 9, 2008) (requiring proof of "some nexus between the firearm and the drug selling operation") (quoting United States v. Timmons, 283 F.3d 1246, 1253 (11th Cir. 2002)); United States v. Hilliard, 490 F.3d 635, 640 (8th Cir. 2007) (applying a nexus requirement); United States v. Harris, 477 F.3d 241, 244 (5th Cir. 2007) (the burden is the government's); United States v. Bobb, 471 F.3d 491, 496 (3rd Cir. 2006) (holding that evidence is sufficient to support a conviction where it establishes "a nexus between the possession of the gun and the drug trafficking"); United States v. Mosely, 465 F.3d 412, 417 (9th Cir. 2006) (examining whether the required nexus can be shown based on the totality of the circumstances).

In this case, the "factual question" of whether the evidence supports a finding that the gun was possessed in furtherance of a drug trafficking crime, Lomax, 293 F.3d at 705, turns on the content of the record from the trial below. Courts have given wide scope to the theories by which the government may show the required connection between possession of a firearm and a drug trafficking crime:

> When making this factual determination, the fact finder is free to consider the numerous ways in which a firearm might further or advance drug trafficking.

12

> For example, a gun could provide a defense against someone trying to steal drugs or drug profits, or it might lessen the chance that a robbery would even be attempted. Additionally, a gun might enable a drug trafficker to ensure that he collects during a drug deal. And a gun could serve as protection in the event that a deal turns sour. Or it might prevent a transaction from turning sour in the first place. Furthermore, a firearm could help a drug trafficker defend his turf by deterring others from operating in the same area.

Id. (adopting the listed examples from those enumerated in United States v. Ceballos-Torres, 218 F.3d 409, 415 (5th Cir. 2000)); see also Porter, 2008 WL 4140283, *6 (same); Bobb, 471 F.3d at 496-97 (same).

Other circuits have also upheld convictions on the possession prong of 924(c)(1)(A) where the gun was in physical proximity to the drugs being trafficked and there was testimony that drug dealers kept guns for protection in drug deals, so that it could reasonably be inferred that the gun was being kept for use in the drug trafficking enterprise. Hilliard, 409 F.3d. at 640-41; Bobb, 471 F.3d at 496-97; Mosley, 465 F.3d at 705-06; see also United States v. James, 464 F.3d 699, 405 (7th Cir. 2006) (holding that where defendant's associates had testified to his ownership of several guns, the government had met its burden by showing that one of those gun and drugs attributed to the defendant were found in the same shoebox). All of these constructions suggest that the gun must play some role in the transaction or have a discernible effect on its outcome.

13

At oral argument, the government contended that because Elswick received the gun in exchange for drugs, he possessed it in furtherance of a drug trafficking crime. This is, of course, the issue the Supreme Court declined to reach in Watson. 128 S. Ct. 585-86. We conclude, similarly, that we need not resolve it here.[2]

Although we have not had occasion to opine on the relationship between the "in relation to" and "in furtherance of" prongs of § 924(c), we find the evidence to be deficient even under the government's theory of the case. The government has proven that Eric Woods took the gun and gave it to Looney intending that it be exchanged for drugs; that Elswick trafficked in methamphetamine; and that at some point following

_____

[2]Some of our sister circuits have concluded that the phrase "in furtherance of" in the statutory provision on possession represents a different, and heightened, standard from that associated with use and carrying. See United States v. Castano, No. 06-1720, 2008 WL 4470849, at *7 (6th Cir. Oct. 7, 2008) (noting that the statutory text requires the government meet a "higher standard" in possession cases); United States v. Gamboa, 439 F.3d 796, 810 (8th Cir. 2006) ("[T]he language 'in furtherance of' requires a slightly higher standard of participation than the language 'during and in relation to.'") (citations omitted); United States v. Combs, 369 F.3d 925, 931 (6th Cir. 2004) (analyzing the presence of the disjunctive "or" to find that the standards are different); Ceballos-Torres, 218 F.3d at 413-15 (finding that the "mere presence" of a firearm, without more, is not sufficient to meet the higher standard); accord United States v. Lipford, 203 F.3d 259, 266 (4th Cir. 2000) (holding that even in the case of the "in relation to" requirement, the presence of the firearm must be more than coincidental).

14

the drug transaction Elswick was in possession of the gun. The government has not, however, proven the facts upon which its theory of Elswick's 924(c)(1)(A) conviction is predicated: that he received the gun in exchange for drugs. Based upon the record, no rational trier of fact could conclude beyond a reasonable doubt that Elswick possessed a firearm in furtherance of a drug trafficking crime.

The record shows that Elswick committed a drug trafficking crime. Eric Woods testified that he saw Elswick hand something to Looney and that this was a bag of methamphetamine. However, there is no evidence in the record that Elswick possessed the gun at the time of this transaction. None of the government's witnesses could place Elswick, the gun, and the drugs in the same chain of events. Though he testified that Elswick later delivered the drugs they received, Eric Woods did not see who took possession of the gun from Looney. The later transaction with Lloyd Woods in which Elswick sold the gun for $50 was not related to drug trafficking, nor was any claim of such connection made. Elswick's statement, which was admitted into the record, made no mention of a drug transaction; and Eric Woods did not know who actually received the gun. There is no evidence that the gun was used for protection or intimidation during the transaction. Elswick's possession of the gun is not temporally connected with the methamphetamine transaction either

15

through the testimony or exhibits presented at trial. The government could not even establish that Elswick had received the gun prior to the transaction or was promised it as compensation for the drugs. In fact, the evidence in the record does not even establish that the events in question all took place in the same year. <u>See</u> J.A. at 22, 35, 79, 90, 134.

On the record before us, therefore, it is clear that the evidence is insufficient to support Elswick's conviction under § 924(c)(1)(A) for possessing a firearm in furtherance of a drug trafficking crime.

### III.

For the foregoing reasons, we affirm Elswick's conviction and sentence as to Counts One and Two, and we reverse and remand with respect to Count Three for resentencing in accordance with this opinion.

<u>AFFIRMED IN PART, REVERSED IN PART,</u>
<u>AND REMANDED FOR RESENTENCING</u>

SHEDD, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's decision to affirm Elswick's convictions for possession with intent to distribute, and distribution of, methamphetamine (Count 1) and possession of a firearm by a convicted felon (Count 2), and its conclusion that Elswick's conviction under 18 U.S.C. § 924(c) (Count 3) cannot stand insofar as it is premised on the "use" prong of the statute in light of Watson v. United States, 128 S. Ct. 579 (2007). However, Elswick was also indicted and convicted in Count 3 under the separate § 924(c) prong that criminalizes the possession of a firearm in furtherance of a drug trafficking crime. The majority holds that the evidence is insufficient to sustain that conviction because no rational trier of fact could conclude beyond a reasonable doubt that Elswick possessed a firearm in furtherance of a drug trafficking crime. I disagree with this holding.[1]

---

[1]Watson is the only basis which Elswick argued in his brief for reversal on Count 3. See Brief of Appellant, at 29 (Count 3 section title: "Whether Trading Drugs For A Gun Constitutes The Use Of A Firearm 'During And In Relation To . . . [A] Drug Trafficking Crime' Within The Meaning of 18 U.S.C. § 924(c)(1)."). I therefore question whether we should review the evidentiary sufficiency on Count 3 as it pertains to the possession prong. See United States v. Al-Hamdi, 356 F.3d 564, 571 n.8 (4th Cir. 2004) (noting the "well settled rule that contentions not raised in the argument section of the opening brief are abandoned"). Moreover, it does not appear that Elswick challenged the sufficiency of the evidence below under Federal Rules of Criminal Procedure 29. Accordingly, to the
(Continued)

17

Viewed in the light most favorable to the government, see Evans v. United States, 504 U.S. 255, 257 (1992), the evidence is clearly sufficient to support a reasonable determination that Elswick possessed the firearm in furtherance of a drug trafficking crime. Specifically, the government presented evidence that Eric Woods stole his father's firearm and enlisted the help of his friend Terry Looney to use it to get drugs. J.A. 22-23. Looney told Woods that he knew where they could trade the firearm for drugs, and he took Woods to a house in an area known as "Dry Fork" and told him that Elswick was the person there who could give them drugs for the firearm. J.A. 22-23. Looney then went inside the house with the firearm. J.A. 24. When Looney returned, he told Woods that they needed to go to a Dry Fork store and wait. J.A. 24. Within 15-20 minutes, Elswick arrived at the store and delivered drugs to Looney. J.A. 24-25. Elswick later contacted Woods' father and returned the firearm to him. J.A. 38-40. Importantly, Elswick subsequently admitted in a sworn statement that he had obtained the firearm from "two boys" for $50 at a Dry Fork store. J.A.

_____

extent that we should review this claim at all, our review should only be for plain error. See United States v. Wallace, 515 F.3d 327, 331-32 (4th Cir. 2008).

134. However, Elswick testified at trial that he had lied about obtaining the firearm in his sworn statement. J.A. 84, 90-91.

By convicting Elswick of Count 1, the jury credited Woods' testimony (and disbelieved Elswick) that Elswick delivered the methamphetamine at the convenience store.[2] Based on Elswick's admission that he obtained the firearm from "two boys" at a Dry Fork convenience store, as well as the evidence establishing that Elswick returned the firearm to Woods' father, the jury also could have reasonably found (consistent with Woods' general testimony) that Looney delivered the firearm to Elswick immediately before the drug transaction. This set of circumstances, properly viewed "as a coordinated and interrelated whole," United States v. Hughes, 716 F.2d 234, 240 (4th Cir. 1983), is sufficient to establish that Elswick received the firearm in payment for the methamphetamine and

---

[2]The jury obviously disbelieved much of Elswick's testimony because he not only denied delivering the methamphetamine to Looney and Woods, but he also denied (contrary to the verdict on Count 2) ever possessing the firearm. I note that the difference between Elswick's pretrial version of events (i.e., he bought the firearm for $50) and Woods' testimony (i.e., Looney traded the firearm for drugs) is immaterial because the jury could have believed that Elswick received the firearm from Looney and Woods and disbelieved that the exchange was for cash rather than drugs. See United States v. Pruneda-Gonzalez, 953 F.2d 190, 196 n.9 (5th Cir. 1992) ("Not only is a jury free to choose among reasonable constructions of the evidence, it is afforded the latitude to choose to believe part of what a witness says without believing all of that witness's testimony." (citations and internal punctuation omitted)).

19

thereby possessed the firearm in furtherance of the drug trafficking crime charged in Count 1. See United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) (holding that § 924(c) "requires the government to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime . . . [and] whether the firearm served such a purpose is ultimately a factual question"); see also United States v. Woods, 271 Fed. Appx. 338, 346 (4th Cir. 2008) (holding in light of Watson that a defendant who traded drugs for firearms "obviously 'possessed' firearms, under any meaning of that term, when he obtained them in the course of his drugs-for-guns business").

Based on the foregoing, I concur in Parts II-A and II-B of the majority opinion, but I dissent from Part II-C.