**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 13-4212**

───────────

UNITED STATES OF AMERICA,

              Plaintiff – Appellee,

    v.

STANLEY D. PARTMAN, a/k/a Goat,

              Defendant – Appellant.

───────────

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Joseph F. Anderson, Jr., District Judge.  (3:11-cr-02063-JFA-10)

───────────

Argued:  March 19, 2014          Decided:  April 23, 2014

───────────

Before DUNCAN, WYNN, and DIAZ, Circuit Judges.

───────────

Affirmed by unpublished opinion.  Judge Duncan wrote the opinion, in which Judge Wynn and Judge Diaz joined.

───────────

**ARGUED:** Casper Fredric Marcinak, III, SMITH MOORE LEATHERWOOD, LLP, Greenville, South Carolina, for Appellant.  Robert Frank Daley, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:** William N. Nettles, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Appellant Stanley Partman appeals the district court's denial of his motion for judgment of acquittal, denial of his motion for a new trial, and application of a two-level obstruction of justice sentencing enhancement. For the reasons that follow, we affirm.

I.

From 1996 to 2011, Partman supplied and distributed cocaine and crack cocaine as a member of a drug trafficking conspiracy operating out of Columbia, South Carolina. During this conspiracy, Partman's coconspirators included, among others, Donnay Rickard, Rondeal Woods, and Anthony Thompson. In March of 2011, the FBI obtained a wiretap for Rickard's cellular telephone that produced recordings of numerous phone calls among Rickard, Partman, and their coconspirators. The recordings include Partman's statements to Rickard that he possessed a firearm and intended to kill Woods for selling bad cocaine. In August of 2011, Partman was indicted for several violations of the Controlled Substances Act, 21 U.S.C. §§ 801, et seq.,[1] and possession of a firearm in furtherance of a drug trafficking

---

[1] Partman challenges his convictions under 21 U.S.C. §§ 841, 843, and 846 and 18 U.S.C. § 2 only indirectly through his appeal of the denial of his motion for a new trial.

crime in violation of 18 U.S.C. § 924(c). Partman's case proceeded to trial on five counts. We recount the relevant portions of the trial below.

A.

At jury selection, Partman appeared before the potential jurors in a collared button-down shirt provided by his attorney and slippers and red pants issued by his detention center. Partman did not object to his attire or request that other civilian clothing be provided at that time. However, nearly a month later, just before trial, Partman sought to disqualify the jury, alleging that the jurors could not be impartial as a result of his appearance before them in prison attire. After interviewing the jury, the district court dismissed two jurors who recalled Partman's jury selection attire with specificity. Juror 129 remembered Partman's "orange or reddish" jumpsuit, J.A. 140, and Juror 132 remembered his "court issued or correctional issued" pants, J.A. 147. A third juror, number 211, had no affirmative recollection and in response to the court's question asked "[w]as it something orange maybe?" J.A. 142. Partman argued that the third juror should also be dismissed, and that because there were no remaining alternates, the jury should be disqualified. The district court denied Partman's motion.

To support its 18 U.S.C. § 924(c) charge at trial, the government sought to establish that Partman had attempted to shoot Woods for selling him bad cocaine in March of 2011. The government presented Partman's admission that he possessed two firearms during the relevant period, the testimony of multiple witnesses that Partman had threatened to kill Woods, a witness's testimony that someone matching Partman's description had entered Woods's barbershop looking for Woods, and wiretap recordings in which Partman stated that he was in possession of a firearm and was attempting to find and kill Woods. The government did not submit any evidence that a firearm belonging to Partman had been recovered or that any witness had actually seen Partman with a firearm during the relevant period. On the basis of this evidence, the jury found beyond a reasonable doubt that Partman possessed a firearm in furtherance of drug trafficking activities.

During the course of the trial, Partman, who did not take the stand, spoke directly to the jury in open court. After the jurors were sworn, Partman interjected "I do not want this guy to represent me because he said...it would not be in my best interest. And he says he's not going to represent me fully because he's not getting paid enough because the [c]ourt appointed him." J.A. 156. The district court reprimanded Partman and explained to him several times that he was not

4

permitted to address the jury or otherwise interrupt the proceedings. However, Partman subsequently spoke to the jury again, stating "Jury they won't let me tell you what I want to -- in this case--." J.A. 680. As a result of his outbursts, the district court removed Partman from the courtroom for the remainder of the trial. J.A. 692. The jury convicted Partman on all counts.

### B.

After his conviction, a probation officer attempted to interview Partman to prepare the pre-sentence report. Partman was nonresponsive, and the parties requested that Dr. Thomas Martin, the forensic psychiatrist who had examined Partman before trial, reassess his competency. Partman refused to cooperate with Dr. Martin's evaluation. As a result, Dr. Martin testified at sentencing that he relied on an interview with one of Partman's correctional officers and recordings of Partman's prison telephone calls to assess his competency. Dr. Martin concluded that Partman was competent. On the basis of Partman's in-court disruptions and noncompliance during the post-conviction process, the district court imposed a two-level enhancement for obstruction of justice.

Partman was sentenced to a total of 396 months' imprisonment. He timely appealed.

5

II.

"We review the district court's denial of a motion for a new trial under an abuse of discretion standard." United States v. Wilson, 624 F.3d 640, 660 (4th Cir. 2010). The district court "should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against it." United States v. Smith, 451 F.3d 209, 217 (4th Cir. 2006) (internal quotation marks and citations omitted).

"We review challenges to the sufficiency of evidence de novo." United States v. Kelly, 510 F.3d 433, 440 (4th Cir. 2007). We must find that the "evidence adequately supports a conviction if, viewing it in the light most favorable to the prosecution, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Abu Ali, 528 F.3d 210, 234 (4th Cir. 2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

We review criminal sentences for reasonableness using an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007). We review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Strieper, 666 F.3d 288, 292 (4th Cir. 2012). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors

6

constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." United States v. Delfino, 510 F.3d 468, 470 (4th Cir. 2007).

## III.

On appeal, Partman contends that a new trial was required because his appearance in prison-issued clothing prejudiced the jury, acquittal was required because there was insufficient evidence to support his 18 U.S.C. § 924(c) conviction, and that the sentencing enhancement was unwarranted because his noncompliance and in-court disruptions did not rise to the level of obstruction of justice. We consider each issue in turn.

## A.

We first address Partman's appeal of the district court's denial of his motion for a new trial. Partman argues that his Fourteenth Amendment right to a fair trial was violated because the jury was not disqualified after he appeared before it in detention center-issued clothing. Partman contends that one juror who remembered his attire was improperly allowed to remain after the district court questioned the jury members about their recollections and excused two other jurors. The government contends that Partman waived his right to have the jury disqualified because he waited for nearly a month after jury selection, until the eve of trial, to make his motion. It

7

argues in the alternative that if the issue was preserved, Partman failed to show actual prejudice resulting from his appearance in prison-issued clothing.

The district court did not abuse its discretion by denying Partman's motion for a new trial because as a matter of law it did not err by impaneling the jury. In fact, the district court went above and beyond what was required of it to secure Partman's right to a fair trial. The "particular evil proscribed" by Estelle v. Williams, 425 U.S. 501 (1976), the controlling Supreme Court precedent, is "compelling a defendant, against his will, to be tried in jail attire." Id. at 508. When a defendant is represented by counsel, the burden is on the defendant, not the court, to raise an objection to the defendant's attire. See id. at 511-12.

Therefore, contrary to Partman's contention, the relevant inquiry is not whether the defendant was seen by potential jurors in prison clothing, but instead, whether he was required by the government to appear in prison clothing. In this case, it is clear on the face of the record that there was no such compulsion. Partman was permitted to wear a civilian shirt provided by his attorney to jury selection. There is no

evidence in the record, nor does Partman contend in his briefs,[2] that he would not have been permitted to wear other pants and shoes as well had he requested them or had his attorney provided them. Furthermore, Partman did not object to the fact that he was wearing prison issued clothing prior to appearing before the potential jury. The district court was under no obligation to determine if this was an intentional choice, mere indifference, or lack of preparation.

Because neither the government nor the district court was responsible for the fact that Partman appeared before the jury in prison attire, the district court did not err by refusing to disqualify the jury and did not abuse its discretion by denying Partman's motion for a new trial.

B.

We turn next to Partman's appeal of the denial of his motion for judgment of acquittal. Partman argues that the evidence presented to the jury was insufficient as a matter of law to support a conviction under 18 U.S.C. § 924(c) because there was no indication that he possessed a firearm in a manner

---

[2] Partman states in both his Opening and Reply briefs that he appeared at jury selection in prison clothes "through no fault of his own." Appellant's Br. 12; Reply Br. 6. However, he does not claim that he was instructed to wear his detention center jumpsuit or that he requested other clothing, and the district court was not obligated to take action on his behalf to secure other clothing.

that furthered any illegal activity. He contends that no evidence established his possession during any particular event, and that no evidence was offered to establish any of the factors identified in United States v. Lomax, 293 F.3d 701 (4th Cir. 2002).

The government contends that it presented sufficient evidence to allow the jury to conclude that Partman possessed a semiautomatic weapon that he intended to, and in at least one case attempted to, use to threaten or kill his coconspirator Woods. It argues that this possession was established at trial by Partman's admissions and corroborated by witness testimony.[3]

To convict under the possession prong of § 924(c), the jury must find beyond a reasonable doubt that the defendant (1) possessed a firearm, and (2) that the possession was in furtherance of a drug crime or other crime of violence. United States v. Jeffers, 570 F.3d 557, 565 (4th Cir. 2009). To prove that a firearm was possessed in furtherance of a drug crime, the government must "present evidence indicating that the possession

---

[3] Partman states in his Opening Brief that the audiotapes containing his purported admissions were "questionable." Appellant's Br. 8. He does not, however, elaborate on this assertion or argue that his conviction should be overturned on the basis of improperly admitted evidence. Any argument Partman could have made to exclude the audiotape evidence is therefore waived. IGEN Int'l, Inc. v. Roche Diagnostics GmbH, 335 F.3d 303, 308 (4th Cir. 2003); see also Fed. R. App. P. 28(a)(8)(A).

of a firearm furthered, advanced, or helped forward a drug trafficking crime." Lomax, 293 F.3d at 705. When making this determination:

> the fact finder is free to consider the numerous ways in which a firearm might further or advance drug trafficking. For example, a gun could provide a defense against someone trying to steal drugs or drug profits, or it might lessen the chance that a robbery would even be attempted. Additionally, a gun might enable a drug trafficker to ensure that he collects during a drug deal. And a gun could serve as protection in the event that a deal turns sour. Or it might prevent a transaction from turning sour in the first place. Furthermore, a firearm could help a drug trafficker defend his turf by deterring others from operating in the same area.

Id. Whether a firearm "served such a purpose is ultimately a factual question." Id. When making that determination, the jury may "consider both circumstantial as well as direct evidence, and a conviction may rely entirely on circumstantial evidence." United States v. Bonner, 648 F.3d 209, 213 (4th Cir. 2011). Furthermore, "a firearm need not be seized to sustain a § 924(c) conviction." Jeffers, 570 F.3d at 566 n.6.

The basis for Partman's conviction is unusual because no firearm was recovered and no witness testified to seeing Partman with a firearm in any relevant instance. However, under the particular facts of this case and our highly deferential sufficiency-of-the-evidence standard, we are constrained to conclude that the jury's verdict was proper.

11

As an initial matter, Partman's contention that the proof was insufficient because the government was unable to adduce evidence related to several of the factors articulated in Lomax is meritless. In Lomax, we stated that among the factors the jury might find helpful in determining whether the in furtherance requirement has been satisfied are:

> [T]he type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

293 F.3d at 705 (quoting United States v. Ceballos-Torres, 218 F.3d 409, 414-15 (5th Cir. 2000)). Partman argues that his conviction cannot stand because no evidence was presented to establish where or when his firearm was found or what condition it was in (easily accessible, loaded, illegally possessed, etc.).[4] It is clear, however, that these factors can only reasonably be considered when a firearm is seized, and as we held in Jeffers, a possession conviction can be sustained even if no firearm is recovered.

As discussed below, Partman's conviction does not rely in any way on seizure or physical evidence of a firearm, and

_____

[4] Partman also asserts that there was no evidence of the type of drug activity being conducted, but this is clearly meritless in light of the overwhelming evidence of cocaine trafficking in the record.

12

accordingly the physical attributes of the firearm the jury concluded Partman possessed are simply irrelevant. <u>Lomax</u> accounts for the possibility that the factors it recites might not be applicable to a particular case. We explicitly stated in <u>Lomax</u> that "there are many factors that might lead a fact finder to conclude" that a defendant's possession of a firearm was connected to his drug trafficking activity and that those factors "may include, but are not limited to" those stated in the opinion. 293 F.3d at 705. In light of the flexibility of the standard and the irrelevance of the particular facts that Partman claims are necessary, the government's failure to prove them to the jury cannot invalidate Partman's conviction.

More generally, there is substantial evidence in the record before us to allow a rational juror to conclude that Partman's conduct violated § 924(c) on these facts. At trial, the government presented Partman's admission that he possessed two firearms in March of 2011 and that he was engaged in drug trafficking activities. J.A. 558-61. It also presented recordings of several phone calls in which Partman admitted that he was currently in possession of a firearm and was attempting to locate Woods in order to shoot him as a result of a bad drug

transaction.    J.A.  263-64[5];  265[6];  268[7].    Several witnesses, including Rickard and Thompson, testified that Partman had admitted to possessing a firearm and had repeatedly threatened to shoot Woods because of Woods's sale of bad cocaine.

Because Partman does not challenge the authenticity or admissibility of the recorded evidence or witness testimony on appeal, his sufficiency argument is more accurately understood as a claim that the jury should have adopted his interpretation of the facts instead of the government's version.    He argues that the evidence actually supports his claim that he never brought a firearm into Woods's barbershop[8] and that his recorded statements to his coconspirators were mere puffery.    Even assuming that Partman's explanation is plausible, "if the

---

[5] "I told him I'd come catch him at the barbershop.    I'm going to do him.    Chopper is in the truck right now.    Looking for him.    I rode by the barbershop again and that MF ain't there."

[6] "Whenever I see you, I'm going to shoot that – whenever I see him, I'm going to shoot him, period."

[7] "I'm gonna shoot that boy if I see him.    I done got my chopper in the truck with me right now."

[8] We  note  that  the  parties'  focus  on  whether  Partman actually brought a firearm into Woods's barbershop is misplaced. Partman was convicted under the possession prong of 924(c), not the use or carrying prong.  As described above, under Lomax, the contours of the in furtherance requirement for possession are broad.    While  an  actual  armed  confrontation  or  attempted confrontation would be sufficient to satisfy this prong, it is not necessary.

14

evidence supports different, reasonable interpretations, the jury decides which interpretation to believe," and we are not entitled to reweigh that evidence. United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994). The jury was clearly entitled to credit the testimony of the coconspirator witnesses and Partman's own admissions if it found them to be convincing. See Bonner, 648 F.3d at 213 ("In assessing the evidence, the jury's resolution of all evidentiary conflicts and credibility determinations must be given deference."). It is equally clear that Partman's admitted attempt to use a firearm to threaten or kill a coconspirator for providing bad cocaine to a drug dealing conspiracy satisfies both the possession and nexus requirements explained in Lomax.

In sum, given the deference accorded credibility determinations and viewed in the light most favorable to the government, we find that the facts here, including Partman's own words, provide sufficient evidentiary support for the jury verdict. We stress the circumstances presented here to indicate the extent to which we rely on them in the absence of physical evidence of the firearm itself or direct eyewitness observation of the violation.

C.

Finally, we turn to Partman's sentencing claim. Partman argues that the district court's application of the obstruction

of justice enhancement was procedurally unreasonable because (1) courts typically only apply the enhancement when cases actually cannot continue to resolution, (2) his conduct caused only minor interruptions to the proceedings because his disruptions were quickly resolved, and (3) the district court did not find that Partman's obstructive actions were willful.  The government contends that the enhancement was warranted by the uncontested facts on the record.  It also argues that Partman waived any objection he might have had to the district court's reliance on his malingering and feigned incompetence to support the enhancement because he failed to raise that argument in his opening brief.  Finally, the government contends that if there was any error it was harmless because the district court explicitly stated that it would have given Partman the same sentence if the enhancement had not applied.  Neither party challenges the substantive reasonableness of the sentence.[9]

We need not decide on the merits of Partman's objections to dispose of this issue.  As the government indicates, "'procedural errors at sentencing...are routinely subject to harmlessness review'" and we "may assume that a sentencing error

---

[9] Although Partman argues in his Reply brief that the sentence was substantively unreasonable, he waived this argument by failing to raise it in his opening brief.  See IGEN Int'l, 335 F.3d at 308 (4th Cir. 2003); Fed. R. App. P. 28(a)(8)(A).

16

occurred and proceed to examine whether the error affected the sentence imposed." United States v. Hargrove, 701 F.3d 156, 161 (4th Cir. 2012) (quoting Puckett v. United States, 556 U.S. 129, 141 (2009)). A sentencing error is harmless "if the resulting sentence was not longer than that to which [the defendant] would otherwise be subject." United States v. Mehta, 594 F.3d 277, 283 (4th Cir. 2010). Assuming error in certain cases allows us "to avoid the 'empty formality' of an unnecessary remand where it is clear that an asserted guideline miscalculation did not affect the ultimate sentence." Hargrove, 701 F.3d at 163.

The "assumed error harmlessness inquiry 'requires (1) knowledge that the district court would have reached the same result even if it had decided the guidelines issue the other way, and (2) a determination that the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor.'" Id. at 162 (quoting United States v. Savillon-Matute, 636 F.3d 119, 123 (4th Cir. 2011)) (internal quotation marks and citations omitted). An explicit statement that the district court would have applied the same sentence absent a particular sentencing enhancement is not required to satisfy the first step of this analysis, but in this case the district court provided exactly that. At sentencing, the district court stated that "[f]or all these reasons, as well as those I have outlined previously, I find that the sentence

17

imposed in this case, 396 months, is the correct sentence even if the obstruction of justice enhancement had not been imposed in the case."[10] J.A. 767. An explicit statement by the district court satisfies the first step of the inquiry and renders the substantive reasonableness of the sentence dispositive. See Hargrove, 701 F.3d at 163.

The district court sentenced Partman to a term of imprisonment of 396 months, based on a criminal history category of II, a total offense level of 40, including the two-level obstruction enhancement, and the 60 month consecutive sentence mandated by Partman's 18 U.S.C. § 924(c) conviction. The guideline range for an offense level of 38 and a criminal history category of II is 262 to 327 months. With the addition of the mandatory 60 month sentence, but without the two-level enhancement, the highest within-guidelines sentence that the district court could have imposed on Partman is 387 months, 9 months less than the sentence actually imposed.

"In reviewing any sentence, 'whether inside, just outside, or significantly outside the Guidelines range,' we apply a

---

[10] The district court's reasons as recounted at sentencing were the particular egregiousness of the drug trafficking activities, including the 14 year duration of the conspiracy, the significant volume of drugs, Partman's possession of firearms, and his use of those firearms to threaten people in the course of his drug trafficking. J.A. 766-67.

18

'deferential abuse-of-discretion standard.'" Savillon-Matute, 636 F.3d at 122 (quoting Gall, 552 U.S. at 41). We are entitled to presume that a correctly calculated within-guidelines sentence is reasonable on appeal. United States v. Mendoza-Mendoza, 597 F.3d 212, 216 (4th Cir. 2010). However, when a sentence exceeds the guidelines range, we "may consider the extent of the deviation [from the guidelines range], but must give due deference to the district court's decision that the § 3553(a) factors on a whole, justify the extent of the variance." Hargrove, 701 F.3d at 163-64 (quoting Gall, 552 U.S. at 51).

A finding of substantive reasonableness is warranted when the "record reflects that the district court conducted a thorough individualized assessment of [the defendant] and his offense conduct in light of the [3553(a)] factors." Id. at 164. In this case it is clear that the district court undertook such an assessment, finding that Partman's conduct, including his dealing over 50 kilograms of cocaine and crack, engaging in a high-speed chase with the police, and using a semi-automatic weapon in connection with his drug trafficking warranted an elevated sentence. The court also considered Partman's minimal criminal history, difficult upbringing, and the need to avoid sentencing disparities with codefendants as possible mitigating factors. Finally it considered Partman's lack of remorse or acceptance of responsibility. See generally 18 U.S.C. §

19

3553(a). Considering the district court's thorough analysis, the small degree of the variance from the guidelines range, and the fact that neither party challenged the substantive reasonableness of the sentence, Partman's sentence satisfies the second prong of the Savillon-Matute analysis.

On the record before us, even assuming that the application of the obstruction of justice enhancement was erroneous, we conclude that the error was harmless and the district court did not abuse its discretion by sentencing Partman to 396 months' imprisonment.

IV.

For the foregoing reasons, the district court's denial of Partman's motion for a new trial, denial of Partman's motion for judgment of acquittal, and application of a two-level enhancement for obstruction of justice are

AFFIRMED.